THE SOUTH CHICAGO BREWING COMPANY

*v.*

ESTHER E. TAYLOR.

*Opinion filed October 26, 1903—Rehearing denied December 2, 1903.*

1. PLEADING—*when cross-petition is properly stricken from files.*  A cross-petition in a burnt records proceeding is properly stricken from the files where it claims no ante-fire title nor anything new or different from the issue formed by the petition and answer, but prays that upon final hearing the petitioner's claim of title be held void and that petitioner be enjoined from asserting it.

2. BURNT RECORDS—*the court may remove cloud in a burnt records proceeding.*  The destruction of records in a claim of title gives a court of chancery jurisdiction, on petition, to inquire into and establish title, and having so acquired jurisdiction it may remove a cloud from the title in the same suit.

3. CLOUD ON TITLE—*complainant need only show title superior to the alleged cloud.*  Complainant in a bill to remove a cloud from the title need not prove title from the government nor a perfect title against all the world, provided he shows a title in himself superior to the alleged cloud.

4. SAME—*title derived from tax sale is a new title.*  The title acquired under a tax sale is a new one in the purchaser derived from the State, but any one who has such title as gives him a right to redeem may, in general, file a bill to set aside the tax sale or tax deed upon offering to pay the taxes, penalties and interest.

5. EVIDENCE—*what not sufficient proof of execution of a deed.*  Evidence that a quit-claim deed executed during the pendency of a suit was similar to an unrecorded lost deed which it was claimed had been in possession of the witness, is not sufficient proof of the existence or execution of such alleged deed.

6. PRACTICE—*amendment of bill after proofs are taken is proper.*  It is proper, in a chancery case, to permit complainant to amend the bill to make its allegations correspond with the proofs, and defendant has a right to answer and contest the case on which complainant claims relief.

7. SAME—*amendment of bill has the effect to set aside default.*  Upon allowing amendment to a bill after proofs are taken it is proper practice to set aside the defaults; but whether such order is made or not, the amendment virtually sets the defaults aside.

8. SAME—*when denial of motion to re-open case is proper.*  Denial of a motion to re-open a case upon the ground that there had been an amendment of the bill and an answer thereto after the hearing before the master is proper, where the amendment conforms to

proofs taken, and the defendant does not show what he expects to prove or that he has used any diligence to obtain proof.

9. COSTS—*in absence of tender, complainant in a bill to set aside tax deed must pay costs.* On a bill to set aside a tax deed the complainant must pay all the costs, unless a sufficient tender was made and refused before such costs were incurred..

APPEAL from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

STORY, RUSSELL & STORY, and GAGE & DEMING, for appellant.

H. S. MECARTNEY, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On August 1, 1896, Hugh L. Mason and the appellee, Esther E. Taylor, filed their petition in the superior court of Cook county against a large number of defendants, among whom was the appellant, asking the court to restore burnt and destroyed records of deeds, plats and proceedings in the title to that portion lying north of the center line of One Hundredth street, of block 19 in Bowen's addition to South Chicago, being a subdivision of the north quarter of section 7 south of the Indian boundary line, in township 37, range 15, in said county, and to establish and confirm the title of petitioners to the same. During the pendency of the suit appellee purchased the interest of Hugh L. Mason in the premises, and that fact was set forth by supplemental petition filed December 15, 1898. The other defendants, to whom the premises had been conveyed at various times, were defaulted. The averments of the petition respecting the title claimed by appellant were, that it claimed to be in possession of the premises by means of a wire fence along the easterly side thereof, and a fence along the northerly side of One Hundredth street, and a small oil house or out-building at the south-easterly side of said.

premises; that its claim of title and possession was based on a tax deed to J. A. Brophy, dated April 23, 1887, and a quit-claim deed from him to appellant, dated July 21, 1887, and that said tax deed was void.

Appellant answered the petition, denying the ownership of petitioner, and set up its title by virtue of its tax deed to Brophy mentioned in the petition, but denied that said deed was its only title. It alleged that Rudolph Brand conveyed the premises about October 17, 1884, to Charles Brand and Ernest Hummel, partners, who then took possession of the premises and the title passed to appellant; that Brand & Hummel and appellant paid all the taxes legally assessed thereon up to the commencement of the suit; that the deed from Rudolph Brand was claim and color of title in Brand & Hummel made in good faith, and that the deed from Brophy to appellant was also claim and color of title made in good faith. It was therefore alleged, that by virtue of said deeds and claim and color of title, with possession for seven years and payment of taxes for that period, appellant became the owner of the property to the extent and according to the purport of its paper title, under section 6 of the Limitation act. Appellant afterward filed what was called a cross-petition, alleging that it had derived title to the property in the mode and manner mentioned in its answer, and asking the court to declare the claim of title of appellee to be void and to remove said claim as a cloud upon its title and to enjoin her from asserting any title to the land. On motion, the court struck this cross-petition from the files.

The issues formed by replication to appellant's answer were as to the title of the petitioner, the title of appellant under the tax deed to Brophy and the quit-claim to it and the alleged deed from Brand, with possession and payment of taxes for seven successive years, and the right of the petitioner to have said tax deed and quit-claim deed removed as a cloud upon her title. The

cause was referred to a master in chancery, who took the evidence and reported the same, with his conclusion that appellee was the owner in fee simple of the premises by a connected chain of title from the government of the United States through a patent to Ash Kum, an Indian chief of the Pottawatamie Indian nation, in pursuance of a treaty made and concluded by the United States and the Pottawatamie Indians on October 27, 1832, and subsequent conveyances from persons holding said title by conveyance or by descent. The master also found that for several years previous to the Chicago fire of 1871 James H. Bowen was in possession of the premises under claim of title thereto, and while in such possession received a deed of conveyance from Edward Sorin on April 25, 1871, which deed was executed and delivered in good faith; that Bowen and his grantees continued in possession until the fall of 1888; that the deed from Sorin to Bowen was recorded before said fire; that Bowen made the plat of the addition, and that the appellee had proved a full and perfect chain of title by regular conveyances from Bowen to herself, independently of the title from the government. Respecting the alleged title of the appellant by virtue of deeds, possession and payment of taxes, the master found that Rudolph Brand was never in possession of the premises; that he was a stranger to the title, and that there was no evidence that the alleged deed from him to Brand & Hummel was ever executed, and if it was, there was no evidence of any privity between the partnership of Brand & Hummel and appellant. The master found the tax deed to Brophy to be void, but the quit-claim deed from him to appellant to be sufficient proof of claim and color of title made in good faith, but found that appellant did not continue in actual possession for any period of seven successive years under claim and color of title based on the quit-claim deed from Brophy, or any other color of title, and that appellant did not pay the taxes for seven suc-

cessive years.  The master recommended that the tax deed of Brophy and the quit-claim deed from him to appellant be set aside upon payment of the taxes, with interest thereon, and as to the costs found that not more than one-fifth of the cost of the proceeding had been incurred on the issue respecting the setting aside of the tax deed as a cloud upon the title of appellee, and recommended that she be decreed to pay one-fifth of the costs as a condition to relief, and that appellant be decreed to pay the other four-fifths of the costs.

After the evidence was taken, the appellee obtained leave of court to amend her petition without prejudice to the defaults, proceedings and proofs in the case, and amended the petition on July 14, 1902, by setting up the possession of James H. Bowen before the Chicago fire, and claiming ownership by virtue of his possession and the complete chain of title to her, independently of her chain of title from the government under the patent to Ash Kum.  To the petition as amended, appellant filed an answer, not confined to the amendment or defenses to it, but again covering the whole case, and again setting forth its alleged title by the deed from Rudolph Brand and the tax title, with possession and payment of taxes. Appellee moved to strike this amended answer from the files, but the court permitted it to stand, and the replication previously filed was allowed to stand to such amended answer.

The court overruled exceptions of appellant to the report of the master, and on February 25, 1903, entered a final decree, with findings substantially the same as those of the master.  The court found that the taxes, with interest thereon, paid by Brophy and appellant, amounted to $900; that the costs, including a master's fee of $1945, had been paid by appellee, except $3 paid by appellant; that appellant should pay four-fifths of the costs and the appellee one-fifth, but the money due the appellant should be satisfied by setting off the $900

against four-fifths of the costs; that four-fifths of the costs amounted to $1556 and one-fifth to $389; that the appellant having paid $3, the balance due from it was $1553, and after setting off the $900 due it, it should pay the balance of costs, $653. The decree established and confirmed the title in appellee, restored the burnt and destroyed records, ordered appellant to surrender possession to appellee, and decreed that appellee recover said balance of $653 costs from appellant and have execution therefor.

It is contended that the court erred in striking from the files the cross-petition of appellant. Section 13 of the Burnt Records act gives a defendant a right to file a cross-petition if he desires to do so, but in this case appellant claimed no ante-fire title or that any conveyance in its chain of title had been destroyed. Its title was a new and independent one, originating in the tax proceedings and not dependent upon any previous title. The cross-petition set up nothing that was not contained in the answer, and did not ask to have any conveyance removed as a cloud upon appellant's title. It was in no proper sense a cross-petition seeking affirmative relief, but simply prayed that upon the final hearing the court should declare the claim of title of appellee to be void and to exist only as a cloud upon appellant's title, and should enjoin her from claiming or asserting any title. The petition set out the alleged claim of title of appellant, and if, upon a hearing, such title had been found good and the petition had been dismissed for want of equity, the decree would have accomplished all that appellant could have had under its cross-petition. There was nothing new or different in the cross-petition from the issue formed by the petition and the answer, and it was not error to strike the cross-petition from the files.

Ash Kum, the Indian chief, conveyed the premises on October 24, 1835, to Louis DeSeille, who died in 1837, and appellant makes many objections to the proof of heir-

ship and conveyances from his heirs in the chain of title to appellee. The issue between appellant and appellee related only to the title claimed by appellant under section 6 of the Limitation act, by virtue of possession under claim and color of title with payment of taxes for seven successive years, and the question whether appellee had such a title as would enable her to have the alleged cloud removed. Appellant had no title except a quit-claim deed from the holder of an invalid tax deed. The destruction of the records in the chain of title gave the court jurisdiction to inquire into the condition of the title and to establish the same and declare in whom the title was vested, and having acquired such jurisdiction it could remove a cloud from the title in the same suit, but so far as appellant is concerned the proceeding was one to remove a cloud. If appellee showed a good title as against appellant, it was not concerned with the question whether she showed a perfect or connected chain of title from the government. Even in ejectment it is not necessary for a plaintiff to prove title back of the common source. In a proceeding to remove a cloud from title the complainant or petitioner must have some title, legal or equitable, and must recover upon the strength of his own title, but it is sufficient if he makes out a title good against the holder of a mere cloud upon it. A complainant in a bill to remove a cloud is not bound to show a perfect title as against all the world, or with the same strictness as in an action of ejectment. It is not necessary that he show title from the government, but he must show title in himself superior to the alleged cloud. (*Rucker* v. *Dooley*, 49 Ill. 377; *Wing* v. *Sherrer*, 77 id. 200; *Glos* v. *Randolph*, 138 id. 268.) In the case of a sale for taxes, all the estates, legal and equitable, in the land are sold, and the title is a new one in the purchaser, derived from the State. Generally speaking, any person who has such title as gives him a right to redeem may file a bill to set aside a tax sale or deed upon offering to pay the taxes and penalties, with

interest. (*Miller* v. *Cook*, 135 Ill. 190; *Burton* v. *Perry*, 146 id. 71.) If the title of appellee was good as against appellant she had a right to have a cloud held by appellant removed, and if she showed title by a connected chain of conveyances from Bowen, who was in possession in 1871 under a deed purporting to convey title, her title would be superior to that derived under a subsequent invalid tax deed. It was proved that Bowen was in the actual occupancy, by tenants and buildings, of a part of a tract of land, including the premises in question, and under a conveyance of the whole, and his possession would be co-extensive with his paper title. So far as these premises were concerned, they were submerged by the waters from the Calumet river up to the year 1890. Boats passed over, but no person was on the land in any other way, except on the ice in the winter. In the year 1890 the Calumet river at that point was moved by the United States government between one hundred and two hundred feet west and material dredged from the river was deposited upon the land, so that in the fall of 1890 it was raised above the flooding from the river. The appellant claimed that Brand & Hummel had a board fence built in the water around the premises about 1884,—the date of the alleged deed from Rudolph Brand,—and that the fence being destroyed and the boards carried off or destroyed, appellant built the wire fence in the same place.

It will be unnecessary to inquire whether there was any fence on the premises before July 21, 1887, when appellant received its quit-claim deed from Brophy, for the reason that there was no proof of the alleged deed from Rudolph Brand, in 1884, to Brand & Hummel. An unrecorded quit-claim deed executed after the commencement of this suit was offered in evidence, together with testimony that it was similar to a deed alleged to be lost. Rudolph Brand was a stranger to the title and never in possession, and no deed from him to Brand & Hummel was of record. There was no evidence of the execution

of any deed by Rudolph Brand in 1884, by signing, sealing or delivery, or by proof of an acknowledgment by him of such a deed. Evidence that a quit-claim deed executed during the pendency of the suit was similar to a deed in the possession of the witness which had been lost was not sufficient to prove that fact. As it was not proved that any deed was executed in 1884, appellant could not prove its title from such source, even if it connected itself with such deed. There was no evidence of any connection between Brand & Hummel and the corporation. In 1887 a corporation was formed under that name, and the name was subsequently changed to that of appellant, but there is no evidence that appellant acquired anything from the partnership.

When appellant received the quit-claim deed of July 21, 1887, the land was under water and useless for any purpose except harvesting ice, and the ice was filled with weeds, pond lilies and rushes. On November 2, 1885, Douglas S. Taylor, the husband of appellee, from whom she derived title, executed a lease, in which she joined, for certain land, with the privilege of harvesting and cutting ice on these premises until October 31, 1890. The lessees put up slides for ice on the land, but did not cut much at that time on account of the condition being unsatisfactory. The slides were removed and put up again in the winters of 1886-87 and 1887-88. In the winter of 1888-89 there was no ice to be cut, and in erecting the ice slides in the winter of 1889-90 a post-and-wire fence was found on the premises. It had been built after November, 1888, and before February, 1890, and appellant then claimed possession and prohibited putting up the ice slides. Appellant had possession at that time, but in 1890 Mason and Douglas S. Taylor entered into a contract with the contractors dredging the Calumet river for the United States government, for filling in the land, and it was filled at their expense, amounting to $700, paid in September, 1890. Appellant knew of the contract

and saw the land being filled under it by Mason and Taylor, and whatever possession it previously had by virtue of its wire fence or any previous board fence was then abandoned.   The possession of Mason and Taylor, who claimed to own the land and were filling it at their expense above the danger of flooding from the river, was utterly inconsistent with any claim of possession by appellant.   Appellant had possession afterwards, but had not been in possession seven successive years when the suit was commenced, on August 1, 1896.

Appellant also failed to prove payment of taxes for seven successive years.   It is conceded that as to an undivided eight twenty-firsts of the land, on which the tax was paid by Mason January 10, 1891, there was such a failure, and that the Statute of Limitations is applicable to only thirteen twenty-firsts.   There was also a failure as to the latter share.   The taxes of 1894 on the premises became payable January 16, 1895, and were paid by Taylor.   Appellant had previously, on December 22, 1894, given to John J. Hanberg, the collector, $170 to pay the taxes when they became due.   He had not received the book or warrant, and when he received them, on January 16, and was authorized to collect the tax, he received payment from Taylor and marked it as the first payment, giving a receipt therefor.   Appellant made Hanberg its agent to make the payment, and there was no evidence that the taxes were actually applied or accounted for by Hanberg, in his capacity as collector, before the payment by Taylor.   On the same day he marked a payment by appellant as a second payment of the same taxes. The evidence shows that the first payment was actually made by Taylor.   Appellant did not show good title under the Statute of Limitations, and appellee proved a superior title and that she was entitled to redeem.

After the decree was entered, appellant moved the court to set it aside and for a rehearing, to enable it to introduce further evidence material to the issues in the

case.    There was no showing what the evidence was, whom it was expected to prove it by or that there had been any diligence in obtaining and producing it.    The motion was a general request to open the case, based on the fact that there had been an amendment to the petition, and an answer thereto, after the testimony was taken before the master.    The amendment to the answer was filed July 14, 1902, and the decree was on February 25, 1903.    During the intervening period there was no attempt to take any new testimony.    The amendment was proper, since a complainant must recover on the case made by his bill, and appellant had a right to answer and contest the case on which appellee claimed relief. (*Adams* v. *Gill*, 158 Ill. 190.)    It was also proper to allow the amendment after the proofs were taken, so that the allegations and proofs might correspond.    The regular and proper course upon an amendment is for the court to set aside the defaults, but, whether there is such an order or not, an amendment to a bill virtually sets the default aside. (*Gibson* v. *Rees*, 50 Ill. 383; *Lyndon* v. *Lyndon*, 69 id. 43.)    Appellant is not interested in any question as to the effect of the amendment or the setting aside of defaults as to other parties.    It was entitled to answer the new claim stated in the amended petition.    The amended answer was proper so far as it answered the amendment to the bill and alleged any matter of defense thereto.    So far as appellee was concerned, the amendment made her petition conform to proofs already taken. On the reference before the master several witnesses were produced and examined by appellee as to the possession of Bowen, and they were cross-examined by the appellant.    When the amendment was made setting up the facts proved by such witnesses, if the appellant had any evidence that Bowen was not in possession it should have moved with reasonable diligence in procuring and offering such evidence.    It not only did not do so, but did not show that it had any evidence of that character.

The court was not called upon to re-open the case and continue it under those circumstances.

The court found the amount due appellant, which appellee was bound to pay as a condition to the relief asked for, to be $900, but adjudged four-fifths of the costs against appellant and satisfied the $900 by way of set off against such costs. There was no tender to the appellant of the amount due before the suit was begun, and in such a case it could not be required to pay the costs. The rule is, that on a bill to set aside a tax deed the complainant must pay all the costs, unless a tender is made and refused before incurring costs. (*Gage* v. *Busse*, 102 Ill. 592; *Gage* v. *Arndt*, 121 id. 491; *Glos* v. *Beckman*, 168 id. 74.) Where the owner does not pay the taxes due the State, but permits his premises to be sold, it is clearly inequitable to compel the holder of the deed to pay the costs where there has been no tender of the amount,— and this is so, notwithstanding the petition contains an offer to pay whatever may be found to be due. Counsel for appellee says that appellant should pay the costs because it contested the suit and asserted title under its tax deed. Appellee had a right to 'make a tender of the amount due and thereby prevent a judgment for costs against her, if appellant elected to refuse it. She did not choose to do so, but brought the defendant into court, where she was bound to prove the invalidity of the tax deed, and could then only have relief by paying the amount due for taxes and interest. We do not see any ground for changing the rule in the fact that appellant denied the averments of the petition and required appellee to prove them. The master reported that not more than one-fifth of the costs was made upon the issue in which appellant was interested, and the decree required it to pay four-fifths of all the costs, but under the well established rule it could not be required to pay any costs.

The decree of the superior court is affirmed, except so far as it requires appellant to pay costs and sets

off moneys due it against such costs, and the cause is remanded to that court, with directions to amend the decree so as to require the payment of all costs by appellee and the payment to appellant of the amount due for taxes and interest.

*Affirmed in part and remanded.*