Bill Board Publishing Company, Plaintiff in Error, v. F. C. McCarahan, Defendant in Error.

Gen. No. 17,366.

1. APPEALS AND ERRORS—*orders reviewable.* It would seem that a writ of error cannot properly be sued out to reverse a void order.

2. DISMISSAL—*when erroneous.* Where after a chancery cause has been placed on the trial calendar it is by agreement of the parties referred by the court to a master, but no notation of such reference is made on the calendar, it is erroneous to dismiss the cause for want of prosecution, when it is reached in the regular call, the proceedings before the master being still pending.

3. DISMISSAL—*effect of Practice Act.* Section 21 of the Practice Act of 1907 does not deprive a judge of the power to pass a chancery case on the docket without action where he finds that it has been referred to a master.

4. JURISDICTION—*ouster.* A chancery court after reference of the cause to a master to take evidence is not ousted of jurisdiction, and has power to make an order dismissing the cause for want of prosecution.

5. JURISDICTION—*void order.* Where a court has jurisdiction of a chancery cause an inadvertent order of dismissal is not void.

Error to the Circuit Court of Cook county; the Hon. ADELOR J. PETIT, Judge, presiding. Heard in this court at the March term, 1913. Reversed and remanded. Opinion filed May 26, 1913.

Statement by the Court. F. C. McCarahan, the plaintiff in error, about May 1, 1907, became the Chicago representative of the Bill Board Publishing Company to solicit advertising orders for a publication issued by that corporation. November 16, 1907, he left this employment. During the course of it there were many business transactions which involved the accounts between McCarahan and the Bill Board Publishing Company. After it was over McCarahan contended that the Bill Board Publishing Company owed him $1,475.13, but the Bill Board Publishing Company denied this and maintained that McCarahan had been overpaid and was indebted to them in a large sum.

February 26, 1908, McCarahan sued out of the Circuit Court of Cook county a writ of attachment against the Bill Board Publishing Company on the grounds of its non-residence and of its alleged indebtedness to him. Debtors of the Bill Board Publishing Company were garnished on the writ of attachment but the garnishments were released under a statutory bond filed by the Bill Board Publishing Company on March 10, 1908, and the said Bill Board Publishing Company appearing, the time for it to plead to said attachment suit was by order of Court extended until May 8, 1908.

A motion for a temporary restraining order was made on said bill and referred to a master. On his recommendation Judge Carpenter of the Circuit Court on May 12, 1908, ordered that a temporary injunction issue as prayed, on the complainants giving bond in the sum of three thousand dollars to pay any decree that might be rendered against it in said cause and all costs and damages resulting from the wrongful issuance of the injunction if it should be dissolved. The bond was given and on May 13, 1908, an injunction writ was issued and on May 14th duly served on McCarahan, from prosecuting against the Bill Board Publishing Company said suit at law or any other suit at law founded on the transactions set out in the bill of complaint until the further order of the Court.

May 20th a solicitor of the court entered his appear-

ance for McCarahan and on June 1, 1908, filed for said McCarahan an answer to the bill of complaint of said Bill Board Publishing Company, insisting that there were no accounts between the parties which could not be properly adjudicated in the suit at law.  Meanwhile on May 29, 1908, a motion was made by the defendant to dissolve the injunction,  June 29, 1908, the complainant by leave amended his bill and the defendant filed an additional answer to the bill as amended and the complainant filed a general replication.  On July 3, 1908, a Chancellor in the Circuit Court, after a hearing, denied the motion to dissolve the injunction and an appeal was taken to this court.  This interlocutory appeal was heard by the Branch Appellate Court, which on July 9, 1909, affirmed the order of the Circuit Court on the grounds that there was an intricate and involved state of accounts between the parties, that there was a fiduciary relation of the defendant to the complainant, and that there was fraud and mistake alleged by the bill.  The opinion rendered by the Branch Appellate Court is reported in 151 Ill. App. 227.  In said opinion is a detailed statement of the allegations of the bill and answer.

Some time before September, 1909, the Circuit Court entered a general order to the clerk of the said court to prepare three individual chancery calendars of all the chancery cases on the docket of the court up to and including July 31, 1909, and to apportion the cases between the three Judges of the Circuit Court sitting as Chancellors.  Calendar No. 3 was assigned to Judge Petit.  Said calendars were prepared and printed and the case at bar, the *Bill Board Publishing Company v. McCarahan,* appeared on said calendar 3 as calendar number No. 1,028.  On October 29, 1909, the case was reached on a call made by Judge Petit of this calendar; but it was then placed on a further special calendar composed of cases which had been taken off the general calendar of Judge Petit, the object, as announced by authority in the Chicago Daily Law Bul-

letin, being to constitute a smaller calendar of live cases and afford litigants an opportunity for an early hearing where it was desired. It was announced that the cases on this calendar would be called in their order, the call beginning on November 16, 1909. On this calendar the case at bar was the 130th in order.

On November 16, 1909, both parties appeared in court and it was then and there agreed or understood that the cause should be referred to a master. On November 19, 1909, both parties, by their solicitors, again appeared before Judge Petit, when the following order was entered:

"On motion of complainant this cause is hereby referred to Granville W. Browning, Master in Chancery, to take evidence and report his findings and conclusions of law to this Court."

No other proceedings were had in said cause until January 26, 1910, when the complainant and defendant, by their solicitors, appeared before said master, and complainant began the introduction of its proof. Several sessions for the hearing of said case were had before the Master during January, February and March, 1910.

March 9, 1910, there appeared in the Chicago Daily Law Bulletin the call of cases to be made before Judge Petit the following day, March 10th. This call was, like those made on the preceding days since November 16, 1909, of cases which had appeared on the special calendar made up as heretofore stated, the call of which was to begin on said November 16th. This call for March 10, 1910, contained the case at bar, *Bill Board Publishing Company v. McCarahan,* which on its being referred to the Master, through inadvertence or otherwise had not been physically stricken from the printed calendar of these cases which had been prepared. As it was so far down on that calendar, No. 130, it had not been reached until March 10. None of the parties or their counsel knew then, nor for months thereafter, that the case was likely to be called on that day or that it was called. But it was called

on said day and the following order was entered in it:

"This cause coming on to be heard having been reached in its regular order upon the trial calendar and neither party appearing in court nor being represented by solicitor, it is ordered that the bill be and the same is hereby dismissed at complainant's cost for want of prosecution."

Not knowing that any such order had been entered, the parties and their solicitors continued their appearances from time to time before the Master and took evidence. There were sessions before the Master on March 25th, March 28th and March 30th, 1910. April 5th both parties appeared before the Master and the complainant formally closed his proof. On April 12, 1910, both parties, by their counsel, appeared before the Master and the defendant made a motion for a report recommending the dismissal of the bill on the evidence which had been adduced by the complainant. This motion was argued by both parties before the Master on May 12th and 16th, 1910, and overruled by him. The defendant began the introduction of his testimony before the Master June 30, 1910, and several sessions were held before him in June and July at which both parties appeared. On July 15th and 27th, 1910, the complainant introduced evidence in rebuttal and the proof was closed by both parties after twenty-eight sessions before the Master and after 689 pages of testimony had been taken.

During the week or ten days prior to September 30, 1910, counsel for complainant and defendant agreed on the date of September 30, 1910, for the hearing of final argument in said cause before the Master and the cause was set down for hearing before him for said date. The Master under that date made a report to the court, stating that the matter before him was ready for argument and final decision. September 21, 1910, the attachment case of *McCarahan v. The Bill Board Publishing Company* was on the call before Judge Windes of the Circuit Court, whether on the so-called

"first call" or on the regular trial call does not clearly appear. On that date, however, the attorney of record in that case for McCarahan, who was also his solicitor in the chancery case at bar, appeared before Judge Windes and told him the chancery suit in question was pending and that the prosecution of the suit at law had been enjoined. He asked Judge Windes, therefore, to have the law case continued generally and according to his statement in the certificate of evidence filed herein, Judge Windes did so continue it.

After September 21st and before September 30th, 1910, the attorney for McCarahan learned of the order of dismissal entered by Judge Petit on March 10, 1910, and gave notice to the attorneys for the Bill Board Publishing Company that on September 30, 1910, he should move before Judge Windes for an order placing the law case on the trial call of the court for trial on a day to be fixed by the court. While attending in accordance with said notice, the counsel for the Bill Board Publishing Company first learned of the order entered on March 10, 1910, dismissing the Bill in Equity herein involved.

The motion before Judge Windes was continued until October 1, 1910, when Judge Windes vacated the order of continuance and set down the attachment suit of *McCarahan v. The Bill Board Publishing Company* for trial on December 30, 1910.

On October 1st, The Bill Board Publishing Company by its solicitors appeared before Judge Petit and filed a written motion to set aside the order of dismissal of March 10, 1910, and apparently contemporaneously or shortly afterward a petition for a rule on F. C. McCarahan to show cause why he should not be punished for contempt in prosecuting and threatening to prosecute the suit at law "in defiance of the injunction," etc. This original petition, however, is not in the transcript of any of the records brought to this court in this matter, but an appearance of McCarahan and his solicitor "for the special purpose of denying the

jurisdiction of the court to entertain such petition and for the further purpose of filing and arguing demurrers to said petition,'' and a demurrer to said petition filed therewith, were filed in the clerk's office of the Circuit Court on October 27, 1910, and afterward, by order, allowed to stand to an amended petition which was filed December 21, 1910, and which does appear in the transcript in cause No. 17,253, in this court. This cause, No. 17,253, was consolidated for hearing with cause No. 17,366 in this court, to the opinion in which this statement is prefixed. It may be noted here that for convenience this statement will be made to include some other matters not properly before this court in cause No. 17,366, but which are the subject of consideration in other cases between the parties, involving the same matter of litigation. The court will thereby be relieved in deciding said other cases from repeating any part of that which here appears. Reference will be made to this statement.

The amended petition of December 21, 1910, set up the matters heretofore detailed in this statement, and then averred that said suit at law was about to be reached for trial, but that as a consequence of the foregoing facts the suit in equity in which the petition was filed was still pending in this court and said injunction still in full force, and that McCarahan was in contempt of court in having appeared and prosecuted and continued to prosecute the law case before Judge Windes.

The demurrer heretofore referred to asserted that on the face of the petition it appeared that the suit on which it puported to be based was dismissed at complainant's costs on March 10, 1910, and had never been revived or reinstated, and that the injunction granted under said bill was made void by the said dismissal, in consequence of which the defendant McCarahan should not be called on further to answer the petition.

December 21, 1910, after a hearing and argument on

the motion to set aside the order of March 10, 1910, (in which hearing the facts as before set forth were made to appear) and a hearing and argument on the demurrers to the petition for a rule on McCarahan to show cause, etc., the court denied the motion to set aside the order of March 10, 1910, dismissing the bill and sustained the demurrer to the petition for a rule, and dismissed the said petition at the petitioner's costs.

Separate orders were entered in these matters and from each of them an appeal was perfected to this court. The appeal from the order denying the motion to set aside the order of dismissal is No. 17,313, in this court; that from the order dismissing the petition for a rule to show cause is No. 17,253.

The appeal No. 17,253 was docketed in this court on December 21, 1910, and the appeal No. 17,313 on Februray 2, 1911. On February 24, 1911, the Bill Board Publishing Company sued out from this court a writ of error to the Circuit Court, seeking to reverse the order of dismissal of March 10, 1910, and this writ of error is cause No. 17,366 in this court and is the one in which the opinion immediately following this statement is to be filed.

In the meantime on the disposition in the Circuit Court on December 21, 1910, of the motion to vacate the order of dismissal of March 10, 1910, and of the petition for a rule on McCarahan to show cause why he should not be punished for contempt, McCarahan and his counsel appeared before Judge Windes and on said December 21, 1910, obtained a judgment in the attachment suit at law in favor of McCarahan and against the Bill Board Publishing Company for $1,690.23 and costs. At this hearing of the suit before Judge Windes the Bill Board Publishing Company, through its attorneys and solicitors declined to appear, stating through them that it relied on its rights under the suit in equity in the Circuit Court enjoining the prosecution of said suit at law.

January 25, 1911, McCarahan caused to be issued an execution on this judgment and delivered the same to the Sheriff of Cook County, who levied the same on certain property of the Bill Board Publishing Company situated in its Chicago offices. February 6, 1911, the Bill Board Publishing Company by its solicitors filed in the Superior Court of Cook county a bill in chancery against McCarahan and the Sheriff of Cook County, which alleged all of the matters hereinbefore set forth, and claimed that great and irreparable injury and loss would result to it from the further enforcement of the execution against it in the hands of the Sheriff; that McCarahan was insolvent and that if it should be finally successful in its litigation it would be unable to collect any decree which it might recover against him.

The bill prayed for a vacation of the judgment at law against the Bill Board Publishing Company and an injunction against the further enforcement of the execution, against the retention by the Sheriff of the property levied on, and against suit on the bond given to release the garnishments in the attachment suit or on the injunction bond given in the equity suit in the Circuit Court, until the determination of the appeals in the Appellate Court; Nos. 17,253 and 17,313.

February 14, 1911, a temporary restraining order in accordance with the prayer of the bill, until the further order of the court, was entered by the Superior Court without notice

February 17, 1911, McCarahan and the Sheriff entered their appearance to said bill in the Superior Court and filed an affidavit of McCarahan with reference to the action of this court on certain motions made in the said appeals. On said affidavit and on the face of the bill he moved for the dissolution of the temporary injunction and on said February 17th the Superior Court dissolved it, and granted an appeal from the order of dissolution to this court. But on February 24th the Chancellor in the said Superior Court vacated said allowance of an appeal, the lan-

guage of the order being that the same "is hereby re-
voked and set aside, for the reason that the law does
not permit an appeal from an interlocutory order re-
voking a temporary injunction while the cause is still
pending and undetermined."

February 27, 1911, the solicitors for the Bill Board
Publishing Company moved in the Superior Court, 1st,
that the court should vacate the order of February
24th, which set aside the order allowing the said com-
pany an appeal; 2nd, allow to it "an appeal to the Ap-
pellate Court from said interlocutory order of Febru-
ary 17th dissolving the injunction on a bond of $250
then offered;" and, 3rd, "dismiss the bill of complaint
herein because the same is for injunction only."

On this motion the court entered an order "That the
said motion be and the same is hereby denied without
prejudice to complainant's right to dismiss the said
bill on its own motion if it so desires to do."

On March 1, 1911, the Bill Board Publishing Com-
pany moved to dismiss its bill on its own motion, and
for the allowance of an appeal to the Appellate Court
"from said order of dismissal."

March 2nd the court, reciting in its order that it
had theretofore decided that the bill did not state a
case entitling complainant to an injunction, ordered
the bill dismissed "on motion of complainant and at
complainant's costs," with the provision that "said
cause is retained specially only for the purpose of
hearing and disposing of the defendant's suggestion
of damages."

An appeal was thereupon perfected to this court,
where it was docketed as cause No. 17,392. A
suggestion of damages had been filed by the de-
fendant McCarahan on February 27th, and on April
12th, 1911, the court heard "the suggestion of dam-
ages for the wrongful issuing of the injunction" and
on "proofs heard in open court and on personal knowl-
edge of the Judge of the Court who heard the cause,"
assessed damages at $200 as McCarahan's "reasona-

ble and necessary damages for solicitor's fees incurred by him upon the dissolution of said injunction.'' From this order the Bill Board Publishing Company prayed, obtained and perfected an appeal to this court, which is docketed as cause No. 17,899.

SIMMONS, MITCHELL & IRVING, for plaintiff in error.

J. S. McCLURE, for defendant in error; WILLIAM STREET, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

The errors assigned in this cause, No. 17,366, are comprised in the two statements: *First,* that the order of dismissal on March 10, 1910, described in the preceding statement of facts was erroneous; and *second,* that it was void.

To the first of these propositions we give our assent; from the second we must withhold it.

We may pass over with a mere mention the question whether a writ of error should or can be properly sued out to reverse a void order. A ''void'' order seems necessarily to be a nullity which requires no reversal.

We prefer, however, since the decision of other causes connected with the one at bar depends on it, herein to state why we consider the order erroneous and why we do not consider it void. The contention that it is either, rests on the fact that on November 19, 1909, by consent of the parties, the order of reference to a Master described in the statement was made.

Counsel argue that an order of dismissal made after that order of reference, without a previous express vacation of the latter, was inconsistent therewith (which may be conceded), and void in consequence of such inconsistency (which is an entirely different proposition.)

The facts that the cause had been referred by the

court, under an agreement of the parties, to a Master after it had been placed on the trial calendar of November 16, 1910, and that the hearing of evidence by him from time to time had gone on during several sessions before the order of March 10, 1910, was entered, and that neither party appeared on that last named date, when the cause appeared in the Law Bulletin on the trial calendar, or learned that any such order had been entered until long after many other sessions before the Master had been held, make apparent to us that the order of March 10, 1910, was entered by inadvertence. It is impossible for us to suppose that in the actual absence of both parties, the Chancellor, had his attention been directed in any manner to the exact situation of the case, would have dismissed the bill for want of prosecution when he had less than four months before referred it to a Master to take evidence and state conclusions, and the complainant had not closed its proof, nor any complaint of want of expedition had been made by the defendant. Had the docket of the court been before him, showing the situation of each case as it was called on the trial calendar, as is practicable and usual for example in country districts, where the business of the courts is small, no such order as that of March 10, 1911, would have been entered. That it was so entered was undoubtedly because no notation had been made, on the trial calendar from which the court was calling the cases, of the order of November 19, 1910, referring the case to the Master.

Section 21 of the Practice Act of 1907 does not affect the matter; neither the provision that "all causes shall be tried or otherwise disposed of in the order they are placed on the docket *unless* the court for good and sufficient cause shall otherwise direct," nor the further one that "no suit or action or proceeding at law or equity shall be dismissed for want of prosecution at any time *except* when such cause shall be ac-

tually reached for trial in its order as set for trial or upon the short cause or daily trial calendar of the court," can in reason be held to mean that a judge finding, on reaching a chancery case on the docket, that it has been referred to a Master, may not pass it without action and proceed to dispose of cases beyond it.

We are not obliged to pass on the question whether when an order of this kind is plainly entered by inadvertence, as we think this one of dismissal was, it is *ipso facto* erroneous. For certainly the order cannot be less erroneous because entered by inadvertence than it would be had it been entered with full knowledge and intention and in the exercise of the discretion of the court. If this order was not entered by inadvertent mistake, then it was entered as an exercise of the discretion of the court, and, in our opinion, if this was the case, was an abuse of discretion. It is needless to discuss this point, as the facts speak plainly for themselves.

The proposition that the order was erroneous under the circumstances we think the reasoning of many cases cited by the appellant, such as *Cook v. Gwyn,* 3 Atkins, 689; *Bailey v. District of Columbia,* 4 App. Cas. D. C. 358; *Dexter v. Young,* 40 N. H. 130; *Tyson v. Robinson,* 25 N. C. 333; *Wilby v. Durgen,* 118 Mass. 64, and others, fully sustains. Cases dependent on the law concerning references to arbitrators, however, although the reasoning may be applicable, are hardly authoritative on the question of reference to a Master. We think, moreover, that these cases are far from sustaining the position that the order was void.

When a court has taken, through sufficient process, jurisdiction of the persons of litigants in a subject-matter of which it also has jurisdiction, something beyond a reference to a Master in Chancery "to take evidence and report his findings and conclusions of law to this court" is necessary to oust it of jurisdiction. And if when it made the order of March 10,

1910, the court had *jurisdiction* to make it, it is not void nor a nullity, however erroneous it may be.

A Master in Chancery, as the Supreme Court through Mr. Justice Scholfield in *Schuchardt v. People,* 99 Ill. 504, said, quoting approvingly from Bouvier's Law Dictionary, was originally a clerk for a chancellor, and became afterwards an assistant to the chancellor, and has been invested with other powers by local regulations. His function, as the same court said in *Ennesser v. Hudek,* 169 Ill. 494, is primarily to perform clerical and ministerial duties in the progress of a case.

The court had power on March 10, 1910, to do exactly as it did do with the cause, namely, dismiss it at complainant's costs, but its action was a misuse of that power and was erroneous.

We think that none of the cases cited by the plaintiff in error to show that the order was erroneous will be found on close examination to ignore this distinction or negative its existence.

When in *Gregory v. Spencer,* 11 Beav. 143, Lord Langdale said, "I can make no order," it is clear that he meant "I can *properly* make no order," and so we hold in this case. But we can go no further.

What Judge Cowen said in *Gould v. Root,* 4 Hill (N. Y.) 554 (as cited by plaintiff in error), if slightly changed would fit this case and the order under discussion:

"I am not aware of any principle which authorizes a party to treat an order as a nonentity merely because a commissioner is forbidden to grant it or a party is forbidden to apply for it," *or a judge should not have granted it.*

"It may be said of every order improvidently granted that the party and officer" *or judge* "have done what the law has forbidden. To say that it was fraudulently and collusively obtained is no more. But to allow as a consequence that it may therefore be disregarded would be letting in a principle under which every judicial act might be questioned collaterally.

The remedy is by direct proceeding, which in the case of orders is revocation," *if asked while the judge retains jurisdiction,* "appeal" *or writ of error* "or motion to supersede" *if asked in time.*

The italics represent that which we have added to the quotation to make it exactly fit the case at bar, and with those additions it is as true as without them. As the same judge said in *Starr v. Frances,* 22 Wend. (N. Y.) 633, of the order he was then discussing, we may say of the order of dismissal in this case: "It is a judicial act done in the course of the cause, open to a rehearing and appeal to this court, and we are not aware of any case in which such an act has been holden *void* even for fraud."

For the reason, however, that it was erroneous it is reversed and the cause remanded to the circuit court for such other and further proceedings therein as to justice shall appertain.

*Reversed and remanded.*