548

Charles G. Frank, Appellee, v. James M. Newburger et al. Walter A. Salomon et al., Appellants.

Gen. No. 40,308.

MATCHETT, J., dissenting.

Opinion filed February 3, 1939.

WILLIAM FRIEDMAN, of Chicago, for appellants; SYLVIA J. ZELDEN, of Chicago, of counsel.

HARRY A. BIOSSAT, of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

May 5, 1938, Walter A. Salomon, Harold A. Salomon and Arthur M. Salomon and their wives filed their verified motion under section 72 of the Civil Practice Act, to vacate and set aside a decree of foreclosure entered November 13 ,1936, and all other orders entered in the foreclosure proceeding subsequent to that date, and that they be given leave to defend the amended bill of foreclosure. Counsel for plaintiff was notified of the motion but filed no pleading of any kind; on May 7th the court entered an order which recited that after the court heard the argument of counsel for both sides it was ordered and decreed that the motion be denied. It is from this order and decree the Salomons prosecute this appeal.

The record discloses that on June 19, 1936, plaintiff as trustee in a trust deed filed his bill to foreclose the lien of the trust deed dated May 15, 1922, which was given to secure an indebtedness of $15,000. The indebtedness was evidenced by thirty bonds and they and the trust deed were executed by James M. Newburger, Blanche Newburger, his wife, August J. Salomon and Gita Salomon, his wife. Before the complaint was filed August and Gita Salomon died, leaving as their heirs at law and next of kin their sons, defendants Walter A., Harold A. and Arthur M. Salomon, and the sons and their wives were made parties to the complaint. Defendants were served with process. Whether any of them filed an appearance does not appear. None of them having filed an answer they were defaulted August 20th and on September 3rd following a decree of foreclosure entered. The amount found to be due, including all costs and solicitors' fees, was $7,483.45. The decree was in the usual form. Fourteen days

thereafter; viz., September 17, 1936, the court, on motion of solicitor for plaintiff, entered an order setting aside and vacating the decree. September 21st another order was entered on motion of solicitor for plaintiff, whereby leave was given plaintiff to file an amendment to the complaint, and it was further ordered that summons issue against parties made additional defendants by the amendment which was filed instanter. The additional defendants were "C. H. Morgan Grocery Co., a corporation, Chicago Law Printing Co., a corporation, 'Unknown creditors of August J. Salomon, deceased, or claimants against the estate of August J. Salomon, deceased, and unknown owners' and 'Unknown creditors of Gita K. Salomon, deceased, or claimants against the estate of Gita K. Salomon, deceased, and unknown owners.'" The amendment to the complaint added three paragraphs in which it was averred that upon the probating of the estates of August J. Salomon and Gita K., his wife, no inventories were filed after the expiration of one year, and that persons may have claims against the two estates which may be asserted because of the failure to file the inventories, within one year. The amendment further averred that the Morgan Grocery company and the Chicago Law Printing company claimed some interest in the real estate, but that such claims are subordinate to the rights of plaintiff.

On the same day a summons was issued against the additional defendants and apparently they were served, and on November 13th the additional defendants were defaulted for failure to answer the amended complaint, and a new or second decree of foreclosure was entered, which apparently is the same in all respects as the original decree except that it covered the matters set up in the amendment to the complaint. The new decree found the amount due plaintiff was $7,544.07, and the chancellor further found that plain-

tiff "is entitled to recover of and from the defendants Walter A. Salomon, Harold A. Salomon and Arthur M. Salomon, as heirs at law and devisees of August J. Salomon and Gita K. Salomon" the value of all assets received by them from the two estates of their parents for any deficiency in case the premises were not sold for sufficient to pay the amount found due by the decree. Afterward the property was sold and on December 17, 1936, a decree was entered approving the report of sale and distribution, and a deficiency decree for $1,497.53 entered. The chancellor in that decree found that plaintiff was entitled to recover from Walter A., Harold A., and Arthur M. Salomon, the heirs and devisees of their parents, the value of all assets received by them from the estates to be applied toward the payment of the deficiency, but limited to that amount.

The verified motion under section 72 of the Civil Practice Act set up that the amendment to the complaint and the entry of the second decree and all subsequent proceedings were without notice to anyone, and that the three Salomon heirs and their wives had no notice or knowledge of the vacation of the first decree or any subsequent act until about April, 1938.

Counsel for plaintiff contends that section 72 of the Civil Practice Act does not apply to chancery cases. The question is one of first impression, not having been considered by any court of review in this State. In support of their contention counsel cite *Tosetti Brewing Co. v. Kahler,* 200 Ill. 369, and other cases. In the *Kahler* case a bill was filed to enjoin the levy of an execution on certain real estate, etc. No proceeding was had under section 89 of the Practice Act, in force at that time, which is identical with section 72 of the Civil Practice Act. But the court in the course of its opinion said that "The statutory motion does not apply to cases in chancery."

Counsel for defendants analyze and discuss the authorities cited by opposing counsel and contend that the question was not squarely involved in the *Kahler* case. Counsel cite *Maniatis v. Carelin,* 287 Ill. App. 154, as authority for their contention that section 72 of the Civil Practice Act is applicable to chancery cases. The *Maniatis* case was a suit in chancery seeking the cancellation of certain contracts. While the suit was pending before a master an order was entered dismissing it for want of prosecution, and some 10 months thereafter a motion or petition was filed under the provisions of section 72 of the Civil Practice Act, to set aside the order of dismissal. The motion was denied and on appeal to this court the order was reversed and the matter remanded; but so far as the opinion discloses the question of whether the provisions of section 72 of the Civil Practice Act are applicable to the chancery case was not considered.

In *Marabia v. Thompson Hospital,* 309 Ill. 147, the court considered a motion made under section 89 of the old Practice Act, and in referring to *Bronson v. Schulten,* 104 U. S. 410, said: ''It was further said that there had grown up in the courts of law a tendency to apply to their control over their own judgments some of the principles of courts of equity which go further in administering summary relief than the old fashioned writ of *coram nobis* did. 'This practice has been founded in the courts of many of the States on statutes which conferred a prescribed and limited control over the judgment of a court after the expiration of the term at which it was rendered. In other cases the summary remedy by motion has been granted as founded in the inherent power of the court over its own judgments and to avoid the expense and delay of a formal suit in chancery. It can easily be seen how this practice is justified in courts of the States where

a system has been adopted which amalgamates the equitable and common law jurisdiction in one form of action, as most of the rules of procedure do.'"

We are of opinion that the holding in the *Kahler* case, that the statutory remedy provided by section 89 of the old Practice Act did not apply to cases in chancery, is not controlling now for the reason that the practice and procedure in common law and suits in equity have been in part amalgamated by the Civil Practice Act, and therefore section 72 of the Civil Practice Act is applicable to the case at bar.

Prior to the passage of the Civil Practice Act in 1933 there were two chapters of our statutes which provided a method for practice and procedure. Chapter 22 had to do with suits in chancery and chapter 110 principally with common law actions. The legislature intended to consolidate in part the practice in one act and to accomplish this passed the Civil Practice Act which, in the first draft of the act was designated the "Consolidated Civil Practice Act," but as this title was thought to be cumbersome the word "Consolidated" was dropped. Section 93 of the act provides: "This Act shall be known as the 'Civil Practice Act' and may hereafter be referred to by that designation." The Civil Practice Act expressly repealed the old Practice Act of 1907 and most of chapter 22 (see sec. 94, ch. 110, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 104.094]). By the passage of the act "the equitable and common law jurisdiction in one form of action" was, to the extent mentioned in the Civil Practice Act, amalgamated and brought the procedure in Illinois in line with most of the other States of the Union. *Marabia v. Thompson Hospital,* 309 Ill. 147.

That this was the purpose of the act is specifically shown by the first section, which provides: "The provisions of this Act shall apply to all civil proceedings,

both in law and in equity, unless their application is otherwise herein expressly limited in courts of record, except in attachment, ejectment, eminent domain, forcible entry and detainer, garnishment, habeas corpus, mandamus, ne exeat, quo quarranto, replevin, or other actions in which the procedure is regulated by special statutes. As to all matters not regulated by statute or rule of court, the practice at common law and in equity shall prevail.'' By section 31 of the act it is provided, ''there shall be no distinctions respecting the manner of pleading between such actions at law and suits in equity, other than those specified.'' A number of other provisions are in the act which abolished many old distinctions in the practice and procedure in actions at law and suits in equity.

Section 72 provides that ''The writ of error *coram nobis* is hereby abolished, and all errors in fact, committed in the proceedings of any court of record, and which, by the common law, could have been corrected by said writ, may be corrected by the court in which the error was committed, upon motion in writing, made at any time within five years after the rendition of final judgment in the case, upon reasonable notice.'' The question whether the error is one of fact or of law has been the subject of many decisions of this and our Supreme Court. A motion under this section will not be entertained if the error sought to be corrected is one of law, but will be entertained only if the error is one of fact not appearing on the face of the record. *Marabia v. Thompson Hospital,* 309 Ill. 147.

In *Risedorf v. Fyfe,* 250 Ill. App. 122, *Heinsius v. Poehlmann,* 282 Ill. App. 472, and *Maniatis v. Carelin,* 287 Ill. App. 154, it was held that failure to give notice under facts somewhat similar to the facts in the case before us is such an error of fact within the meaning of section 72 as to warrant the court in vacating the

decree or judgment on motion of defendants and for leave to defend.

The *Risedorf* case was an action for personal injuries. Defendants entered their appearance in writing, giving their address where notices could be served on them in compliance with certain sections of the Practice Act. Neither of them pleaded to the action and they were both defaulted without notice. Afterward the suit was dismissed as to one defendant and the cause proceeded to trial against the other without the giving of any notice. There was a verdict and judgment in plaintiff's favor for $7,500. The defendant did not appear at the trial. More than a year afterward defendant filed his motion to vacate the judgment under section 89 of the old Practice Act, a demurrer was sustained to the motion and the matter was taken to the Appellate Court. The court referred to a rule of the circuit court and cases decided by this and our Supreme Court, including *Plaff v. Pacific Express Co.*, 251 Ill. 243, in which the court said it was held error to enter judgment by default without notice where a defendant had a written appearance on file. In the *Risedorf* case the court said: "Proceedings under section 89 of the Practice Act . . . required the court to pass on the question as to whether there was an error in fact in the record before it. We will presume that if the court had known that the defendant had his appearance upon file, and that no notice had been given him of the application for default and judgment, the court would not have proceeded to assess the damages in the case. The absence of notice was a question of fact which was not brought to the attention of the court, and did not involve a question of law." The order of the trial court was reversed and the matter remanded.

The *Heinsius* case (282 Ill. App. 472) was an appeal from an order vacating and setting aside a judgment for $10,000 for personal injuries entered on the verdict of a jury, on motion made under section 89. In that action, after the case was at issue, defendant's attorneys served notice on the attorney for plaintiff that they would withdraw their appearance. An order was entered accordingly, but no notice was given defendant. Some months afterward there was a trial *ex parte* and a verdict and judgment as stated. About five months later defendant was served with an execution; he appeared by other counsel and filed a motion under section 72. Plaintiff moved to dismiss the motion on several grounds. The motion was overruled, the verdict and judgment vacated, defendant given leave to defend, and plaintiff appealed. The order of the trial court was affirmed. The court there considered the *Risedorf* case (250 Ill. App. 122) and other cases and held that the failure to give notice was a question of fact which had not been called to the attention of the court.

In the *Maniatis* case (287 Ill. App. 154) a suit that was pending before the master was dismissed without notice to any one, for want of prosecution. Nearly a year afterward a motion was made under section 72 of the Civil Practice Act to vacate the order of dismissal. The court denied the motion, but on appeal to this court the order was reversed. It was held that the failure to give the notice was an error of fact not appearing of record within the meaning of section 72.

In *Madden v. City of Chicago,* 263 Ill. 166, it was held that where, on the call of the calendar, the clerk failed to correctly enter the request of an attorney to have the case set for trial, and the court followed the erroneous minute of the clerk and ordered the case stricken, it was proper under section 89 of the Practice Act to

reinstate the case. The court said it was there contended the mistake was one of law. The court then discusses section 89, and continuing said: "The mistake was clearly one of fact and not of law, and it was proper to entertain the motion made under the provisions of section 89 of the Practice act."

In *North Avenue Bldg. Assoc. v. Huber,* 286 Ill. 375, it was held that an order dismissing a bill without notice to complainants in violation of a rule of court was not binding upon the complainants and may be set aside at a subsequent term. The court there said (p. 383): "The order of dismissal was made without any notice whatever to plaintiffs in error or their counsel and against the express rule of practice of the Circuit Court. It would be more nearly exact to say the court had no jurisdiction to enter the order of dismissal for want of notice to plaintiffs in error. As we understand the record, this order had no binding force whatever on plaintiffs in error by reason of the express violation of the rule of court in respect to giving notice of the pendency of such motion."

But counsel for plaintiff says that the amendment to the bill and to the second decree was not one of substance, but if it was, the question of whether the amendment was one of substance is a question of law, citing *Meyer v. Meyer,* 255 Ill. 436, and other cases. In the *Meyer* case, which was a suit for divorce, the bill was amended after defendant had been defaulted of record. The court held the amendment was purely formal and immaterial and the court might proceed as though no amendment had been made. There was no motion made in that case under section 89 of the old Practice Act, and the case is not in point.

In the instant case the effect of the order (in setting aside the first decree on motion of plaintiff's counsel and thereafter authorizing an amendment to the bill)

was to set aside the default and therefore the defendants should not have been defaulted without notice and a rule on them to plead to the amended bill. *Dahlin v. Maytag Co.*, 238 Ill. App. 85; *South Chicago Brewing Co. v. Taylor*, 205 Ill. 132. Neither in the original bill nor in the first decree were defendants, who prosecute this appeal, charged or held to be in any way liable, while in the bill as amended they were charged with being liable for any assets they received from the estates of their father or mother, in case there was a deficiency decree. And the deficiency decree thereafter expressly found that they were so liable to the extent of any assets they received from their parents' estates. Obviously this was wholly unwarranted in view of the fact that such defendants had in no way been notified that any such claim would be made against them.

But counsel for plaintiff says that no action was taken under the decree but that plaintiff filed a separate complaint in equity for an accounting against the Salomon heirs, which is still pending, and that they can interpose any defense they have in that suit. We think this does not obviate the error, but in any event the matter is not properly before us.

For the reason stated the order of the superior court of Cook county is reversed and the matter is remanded with directions to permit the Salomons to answer the complaint as amended.

*Reversed and remanded with directions.*

McSurely, P. J., concurs.

Matchett, J., dissents.

I agree the decree entered was erroneous. I cannot agree that section 72 of the Civil Practice Act is applicable to decrees in chancery or that the errors disclosed by this record are such ''errors of fact'' as may be corrected by a motion in the nature of a writ of

error *coram nobis* under section 72. The opinion correctly says the case is one of first impression. Without question this proceeding prior to the enactment of the Civil Practice Act was applicable only to judgments at law. This is apparent from the fact that the writ of error *coram nobis* originally was applicable only to judgments at law in the King's Bench Court (Bouvier's Law Dictionary, vol. 1, p. 681); that so eminent an authority on equity pleading as Storey (see 9th edition) does not refer to a proceeding of this nature as applicable to decrees in chancery; that the statement by Mr. Justice Cartwright in *Tosetti Brewing Company v. Kahler,* 200 Ill. 369, was followed by this court in *Bill Board Publishing Co. v. McCarahan,* 180 Ill. App. 525.

Section 72 is in substance section 66 of the Practice Act of 1872 (Hurd's Ill. Rev. Stats., 1905, chap. 110.) It was readopted in the Practice Act of 1907 with the omission of only two words—*"feme covert."* It was readopted in section 72 and precisely as written in the prior Act of 1907. I think it fair to assume it was the intention of the Legislature to accept the construction put upon the section from the time it was first enacted. If the intention had been otherwise I think it would have been stated in language not subject to misconstruction.

The opinion of the majority is that all this has been changed by sections 1 and 31 of the Civil Practice Act. I think such a construction is not justified by the words used, is contrary to the manifest purpose of the act, and can only have the effect in actual practice of rendering insecure for a period of five years titles to property derived from decrees in chancery. The words of section 1 which are material are:

"The provisions of this Act shall apply to all civil proceedings, both at law and in equity, unless their application is otherwise herein expressly limited,

. . . . As to all matters not regulated by statute, or rule of court, the practice at common law and in equity shall prevail.''

Section 31 (1) is as follows:

''Neither the names heretofore used to distinguish the different ordinary actions at law, nor any formal requisites heretofore appertaining to the manner of pleading in such actions respectively, shall hereafter be deemed necessary or appropriate, and there shall be no distinctions respecting the manner of pleading between such actions at law and suits in equity, other than those specified in this Act and the rules adopted pursuant thereto; but this section shall not be deemed to affect in any way the substantial averments of fact necessary to state any cause of action either at law or in equity.''

The title of the act shows it is intended to affect only the adjective as distinguished from the substantive law. Section 72 is as follows:

''The writ of error *coram nobis* is hereby abolished, and all errors in fact, committed in the proceedings of any court of record, and which, by the common law, could have been corrected by said writ may be corrected by the court in which the error was committed, upon motion in writing, made at any time within five years after the rendition of final judgment in the case, upon reasonable notice. When the person entitled to make such motion shall be an infant, *non compos mentis* or under duress, at the time of passing judgment, the time of such disability shall be excluded from the computation of said five years.''

That it was not the intention to abolish fundamental distinctions between law and equity is apparent from section 44 (1) which provides that subject to the rules plaintiffs may join ''any causes or action, *whether legal or equitable or both*,'' and also from section 44 (2),

"any cause of action or counterclaim may be transferred at any time, by order of the court, from the law docket to the equity docket, or vice versa, as convenience and the nature of such action or counterclaim may require, and when so transferred shall proceed as though commenced on the proper side of the court; and any issue may at any time, by order of the court, be transferred for trial to the proper side of the court." The statutory proceeding provided for by section 72 is in substance a suit at law. In *Jacobson v. Ashkinaze,* 337 Ill. 141, the Supreme Court said:

"The essentials of the proceeding under the statute are the same as they were at common law. The pleadings are original, the issues are distinct from the principal suit, and the judgment rendered is a separate judgment. *Mitchell v. King,* 187 Ill. 452; *Domitski v. American Linseed Co.,* 221 id., 161; *Smyth v. Fargo,* 307 id., 300."

Returning now to the very language of section 72, it seems to me that a simple analysis of it forbids the construction adopted by the majority opinion. The section is in one compound sentence of co-ordinate clauses. The subject of the second clause is "errors of fact." This subject is modified by the clause, "committed in the proceedings of any court of record" and further by the clause, "which by the common law could have been corrected." I think the plain and necessary construction of this language is that the errors of fact which may be corrected are such only as could have been corrected *at common law,* which of course excludes decrees in chancery. I regard the question as important. I have already called attention to the fact that section 72 contains a limitation of five years. One of the purposes of the Civil Practice Act, it will be remembered, was to bring about a speedier determina-

tion of questions litigated. To that end the writ of error was abolished, notice of appeal was required with a limitation of 90 days and appeals after 90 days limited to such as might be allowed by the Appellate tribunal. The construction adopted is therefore, as it seems to me, contrary to the spirit of the statute as well as inconsistent with the language of the section. If I am correct in thinking the proceeding applicable only to judgments at law, it is clear the supposed errors of fact which defendants seek to have corrected were such as could have been corrected by appeal, or formerly by writ of error, or if not, by petition to the court of chancery, by which, I cannot doubt, full relief for the unjust provisions of this decree might have been obtained. In *People v. Janssen,* 263 Ill. App. 104, this court said: "The writ of error *coram nobis* was confined to proceedings at law. It is a common law writ and chancery courts had no jurisdiction to issue the same; this for the reason that in chancery the court may at any time, either by motion or by a *nunc pro tunc* order or by motion in the nature of a Bill of Review correct the record or make the decree or judgment speak the truth. *Bradford v. White,* 130 Ark., 532; 1918 L. R. A. p. 1177, 34 C. J., p. 393."