Robert J. Nikola, Minor by Joseph Nikola, His Next of Kin, Appellant, v. Campus Towers Apartment Building Corporation, Appellee.

Gen. No. 40,595.

Heard in the third division of this court for the first district at the February term, 1939. Opinion filed February 14, 1940. Rehearing denied March 12, 1940.

J. S. Pressman, of Chicago, for appellant.

Charles Danto and Kirkland, Fleming, Green, Martin & Ellis, all of Chicago, for appellee; Charles Danto, Walter E. Tinsley and John M. O'Connor, Jr., all of Chicago, of counsel.

Mr. Justice Burke delivered the opinion of the court.

On February 10, 1938, Robert J. Nikola, a boy 13 years of age, by his next of kin, filed a complaint against the Campus Towers Apartment Building Corporation, in the circuit court of Cook county, and therein averred that defendant owned and operated a residential apartment building located at 1033 West Loyola avenue, Chicago, and in connection therewith, through its servants, operated a passenger elevator therein for the purpose of carrying persons from one floor to another; that on April 6, 1937, while the plaintiff was a passenger in the elevator, the defendant, by its servant, operated the elevator in such a negligent manner that the left foot of plaintiff was severely injured. Plaintiff asked damages in the sum of $5,000. He demanded a trial by jury. Summons was issued on February 10, 1938. The sheriff certified that he served the summons by leaving a copy thereof with Jean Cook, an agent of defendant, on February 24, 1938. On May 6, 1938, the court entered an order reciting

that summons had been duly served on defendant, that defendant had failed to answer or otherwise make appearance, that defendant be defaulted and ordered that the complaint be taken as confessed as against the defendant. On June 20, 1938, plaintiff waived his right to a trial by jury. Thereupon the court assessed plaintiff's damages at the sum of $3,000 and entered judgment against defendant. On July 25, 1938, execution was issued on the judgment and on August 18, 1938, a demand under the execution was made on defendant. On September 15, 1938, defendant's attorneys served notice on counsel for plaintiff that on the day following they would appear before the motion judge in the circuit court and move that the judgment and default orders be vacated and that leave be granted to file defendant's appearance and answer to the complaint. On September 16, 1938, defendant presented its verified petition, which set up that the first knowledge it had of the action was received on August 18, 1938, when the demand was made on the execution; that prior to August 18, 1938, defendant had no knowledge of the action or the judgment; that on acquiring such knowledge it conferred with its attorneys, who investigated and discovered the facts; that no summons was served on defendant through Jean Cook by the deputy sheriff named in the return, or by any deputy sheriff on February 24, 1938, or on any other date whatsoever, nor did Jean Cook at any time receive a copy of any summons in the instant case; that defendant believed that plaintiff had withheld making demand on the execution until it was too late for defendant to move to vacate the judgment within 30 days from the entry thereof. The petition then sets out what it describes as a good defense to the merits of the action. The averments are sufficient in our opinion to join issue on the matters alleged in the complaint. Attached to the verified petition were affidavits by Jean Cook and eleven other persons. The affidavits purport to show

that the corporation was not served through Jean Cook and that no other employee was served. On October 7, 1938, the court ordered plaintiff to file an answer to the petition within five days. On October 10, 1938, plaintiff filed a motion to dismiss the petition and therein set out that the petition was substantially insufficient in the following particulars:

"1. It appears that the Petition to Vacate Judgment entered June 20, 1938, was filed on September 17, 1938, thus bringing the filing of the said petition beyond the term of Court in which the judgment was rendered.

"2. It appears on the face of the petition that the sheriff served a summons on the defendant by leaving a copy thereof with one Jean Cook, admittedly an agent of said corporation, on the 24th day of February, 1938.

"3. It appears on the face of the Petition and on the face of the record that the return of the sheriff of said summons was in harmony with the findings of the Court in its judgment that the defendant was duly served.

"4. It appears on the face of the Petition that the defendant is attempting to contradict the return of the sheriff on the summons after the term of Court had ended in which judgment was rendered.

"5. It does not appear in the Petition, nor does defendant contend that the alleged false return had been procured by the fraud of the plaintiff.

"6. This Court is without jurisdiction to vacate and set aside a judgment after the term of Court has ended in which the judgment was rendered, upon the grounds of the false return by the sheriff when that return is in harmony with the findings of the Court in its judgment that the defendant was duly served." On October 20, 1938, the court, after argument and due deliberation, sustained the motion to vacate the judgment and gave defendant leave to file its appearance

and answer within 10 days. Although the court did not expressly rule on plaintiff's motion to dismiss the petition, the order allowing defendant's motion to vacate the judgment was, in effect, a ruling on plaintiff's motion. Plaintiff prosecutes this appeal from the order which vacated the judgment and gave defendant leave to answer.

The first point urged by plaintiff is that a judgment cannot be vacated in the same proceeding after 30 days from the entry thereof, except under the provisions of section 72 of the Civil Practice Act. Section 50 of the Civil Practice Act (sec. 174, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.050]) provides that the court may within 30 days after the entry thereof, set aside any judgment or decree upon good cause shown by affidavit, upon such terms and conditions as shall be reasonable. In the instant case, the motion was presented 80 days after the entry of judgment. Plaintiff insists that as defendant did not present his motion within 30 days following the judgment, he must seek relief, if at all, under section 72 of the Civil Practice Act (sec. 196, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.072]), which provides that "the writ of error coram nobis is hereby abolished, and all errors in fact, committed in the proceedings of any court of record, and which, by the common law, could have been corrected by said writ, may be corrected by the court in which the error was committed, upon motion in writing, made at any time within five years after the rendition of final judgment in the case, upon reasonable notice. When the person entitled to make such motion shall be an infant, non compos mentis or under duress, at the time of passing judgment, the time of such disability shall be excluded from the computation of said five years." Plaintiff then proceeds to argue that a motion to vacate a judgment on the ground that the sheriff made a false return, cannot be entertained under section 72 of the Civil Practice Act. He cites the

case of *Chapman v. North American Life Ins. Co.*, 292 Ill. 179. In that case the defendant filed a motion under section 89 of the Practice Act of 1907. By his motion, defendant in that case challenged the service of the summons. The return by the sheriff showed that service was had by delivering a copy of the summons to the vice president of the corporation, the president not being found in the county. At that time the law required that the sheriff first serve the president, if he could be found in the county. The defendant contended that the president could be found in the county. It will be seen, therefore, that the factual situation involved an attack on the validity of the service, whereas, in the case at bar the contention is that there was no service whatsoever. In the *Chapman* case the Supreme Court said, p. 187:

"The doctrine prevails in this State that the return of the sheriff on the summons, where that return is in harmony with the findings of the court in its judgment that the defendant was duly served, cannot be contradicted after the term of court has ended in which judgment was rendered, except in rare instances, as where the sheriff is sued for making a false return, which is one of his remedies where the defendant is damaged by a false return. (*Hunter v. Stoneburner*, 92 Ill. 75; *Lancaster v. Snow*, 184 id. 534.) In this State, before judgment is taken the sheriff's return can be contradicted when a false return is taken advantage of by a plea in abatement, or, more properly speaking, by a plea to the jurisdiction of the court of the person of the defendant. (*Sibert v. Thorp*, 77 Ill. 43.) All the cases will be readily distinguished that have been cited to us on the question of a sheriff's return, by noting that after judgment has been rendered, and after the term has ended in which judgment was rendered, the sheriff's return is conclusive as between the parties and cannot be taken advantage of by error *coram nobis* unless such false return has been procured by the fraud

of the plaintiff. No such charge is made in this case. So far as the record shows, the plaintiff in this suit knew as little about the whereabouts of the president of defendant as did the court when this judgment was rendered. We are not without authority in our own State upon this question. In *Owens v. Ranstead,* 22 Ill. 161, in referring to a false return of a sheriff, this court said: 'No relief can be had by writ of error, for the record on its face shows no error,— none by *audita querela,—* for if in use it would be inapplicable. That remedy proceeds upon the ground of the validity of the judgment and gives relief upon some matter of discharge subsequent to its rendition, as a release or payment. Nor is there any efficacy in the writ of error *coram nobis,* because at law no averment can be made in the same action against the officer's return.'

"A court of chancery has jurisdiction, under a proper showing, to set aside a judgment at law or a decree in chancery after the term of court is ended, where there has been no valid service on the defendants. But that is not a question for decision in this case, and cases so holding are not applicable. It is quite clear that appellant cannot have relief against the judgment under this motion by reason of the first alleged error of fact. The sheriff's return, if true, showed good service on appellant, and that is not denied. Since the truth of it cannot be controverted under this motion, the judgment must stand."

The writ of error *coram nobis* was an original writ issued out of chancery to the judges of the court of King's Bench, commanding them to examine the record in a particular case. The earliest known use of the writ was to disclose misprision of the clerk, infancy, coverture, or the death of a party. The writ was often used as a procedural device to prevent a failure of justice, since the House of Lords and Exchequer Chamber would review only errors of law. The judges of the King's Bench could relieve against a miscarriage of

justice by recognizing the writ to correct errors of fact only. In 1831 in the case of *Kerr & Bell v. Whiteside,* 1 Ill. (Breese) 390, our Supreme Court was equally divided on the proposition as to whether a motion in the nature of a writ of error *coram nobis* should be recognized. In the case of *Beaubien v. Hamilton,* 3 Ill. (Scammon) 213, decided in 1841, the court said: ''The law is well settled, that where an error in fact is committed in legal proceedings, the court in which the error is committed may correct it by a writ of error *coram nobis,* or on motion.'' In 1867 in the case of *McKindley v. Buck,* 43 Ill. 488, the court said that the writ of error *coram nobis* ''has never been in use in this State, and it has fallen into desuetude even in England.'' In the Practice Act of 1871, the legislature, apparently following the views stated in the latter case, declared that the writ of error *coram nobis* was abolished and substituted a motion in its place. The section was re-enacted in virtually the same language in the Acts of 1907 and 1933. It is now well settled that a motion in the nature of a writ of error *coram nobis* cannot be used to controvert the sheriff's return. After judgment, the return is presumed to be correct since it is a part of the record upon which an adjudication has been made, and the familiar principle that the motion does not lie to contradict a finding of the court applies. Before judgment, the false return may be taken advantage of by a plea to the jurisdiction of the court over the person of the defendant. The language in the *Chapman* case that ''after the term has ended in which judgment was rendered, the sheriff's return is conclusive as between the parties and cannot be taken advantage of by error *coram nobis* unless such false return has been procured by the fraud of plaintiff,'' indicates that a motion under section 72 may be employed to challenge a false return procured by the fraud of plaintiff. Beginning as a writ issued out of chancery and applying only to a restricted group

of situations, error *coram nobis* has become a neces-
sary device. The courts of Illinois, although they re-
fused to recognize the writ itself, have encouraged the
development of its statutory equivalent and permitted
its use in new situations wherever such was consonant
with the history of its common law antecedent. The
expansion of the use of the equivalent of the writ can
be traced to the tendency of the courts of law to apply
equitable principles wherever necessary to prevent
injustice. Prior to the adoption of the Civil Practice
Act, the Supreme Court held that "the statutory mo-
tion does not apply in cases of chancery." In the re-
cent case of *Frank v. Newburger,* 298 Ill. App. 548, this
court was asked to decide whether a motion under sec-
tion 72 of the Civil Practice Act would be proper in a
chancery case. This court, speaking through Mr. Jus-
tice O'CONNOR, said:

"We are of the opinion that the holding in the *Kah-
ler* case, that the statutory remedy provided by section
89 of the old Practice Act did not apply to cases in
chancery, is not controlling now for the reason that the
practice and procedure in common law and suits in
equity have been in part amalgamated by the Civil
Practice Act, and therefore section 72 of the Civil
Practice Act is applicable to the case at bar." Therein
this court recognized that the Civil Practice Act has
expanded the scope of section 72, formerly section 89,
of the Act of 1907.

Defendant states that it has not sought and does not
now seek to invoke the provisions of section 72 of the
Civil Practice Act. While a defendant cannot attack
the return of the sheriff under section 72 of the Civil
Practice Act, the law is well settled that in equity a
person may have relief against a false return occa-
sioned by mistake. Under section 72 the defendant is
not permitted to make any averment against the truth
of the sheriff's return. It is a universal principle that
there is no wrong without an adequate remedy, and

that if a court of law cannot supply a remedy, a court of equity has the power to do so. (*Owens v. Ranstead,* 22 Ill. 161.) In *Kochman v. O'Neill,* 202 Ill. 110, a chancery case, the Supreme Court said:

"Service of summons or an appearance is necessary to enable a court to render a personal judgment against a defendant, and the attack upon the judgment in this case was on the ground that there was a want of jurisdiction over the person of Mrs. O'Neill for want of such service or appearance. A judgment may be set aside where a court has failed to acquire jurisdiction of the person of the defendant. (*Owens v. Ranstead,* 22 Ill. 161; *Grand Tower Mining, Manf. and Trans. Co. v. Schirmer,* 64 id. 106.) Where the want of jurisdiction does not appear on the face of the record it may be shown by evidence outside of the record, provided the evidence is clear and satisfactory and the rights of third parties have not intervened. A sound public policy, the security of litigants and the stability of legal proceedings demand that the return of the sworn officer shall not be set aside or impeached except upon satisfactory evidence. Every presumption in favor of the return is indulged, and it will not be set aside upon the uncorroborated testimony of the party upon whom service purports to have been made. (*Davis v. Dresback,* 81 Ill. 393.) Justice, however, requires that the rules should not be so strict as to prevent all relief against a return which is untrue through fraud, accident or mistake, and if it is clear from the evidence that the defendant has not been served the judgment should be set aside." It is clear, therefore, that where the sheriff, through mistake, has made a false return, that the defendant therein may obtain relief by filing a complaint in chancery. The burden then rests on the plaintiff in the chancery case to establish the allegations of his complaint. Every presumption in favor of the return is indulged, and it will not be set aside upon the uncorroborated testimony of the party upon whom

service purports to have been made. If it be clear from the evidence that the plaintiff in the chancery case has not been served, the judgment should be set aside. In the instant case, the plaintiff elected to file a motion to dismiss. He could have joined issue on the ultimate facts as to whether the defendant was actually served. A motion to dismiss serves the same office as a demurrer and admits all allegations that are well pleaded. For the purpose of the motion, therefore, plaintiff admitted that the defendant was not served. Defendant, not having been served, the court did not have jurisdiction over the defendant. It is not contended that the rights of any third party are affected. It is clear, therefore, that if defendant had filed a complaint in chancery and the plaintiff herein had moved to dismiss the complaint, thereby admitting the facts well pleaded, it would have been the duty of the chancellor to overrule the motion to dismiss and to enter a decree allowing the relief prayed. Reduced to its essential facts, we are called upon to decide whether the court erred because it granted relief by a motion in the same case instead of telling the defendant to file a complaint in equity and to come back a few days later, when the relief would be granted. The final result achieved would be the same. In considering this phase of the case, it is interesting to observe the language of the court in *Marabia v. Mary Thompson Hospital of Chicago for Women & Children,* 309 Ill. 147 (opinion filed June 20, 1923):

"In *Bronson v. Schulten,* 104 U. S. 410, Mr. Justice Miller delivering the opinion of the court, referring to the English practice of allowing a writ of error to bring before the same court in which the error was committed some matter of fact which had escaped attention and was material in the proceeding, said: 'These were limited generally to the facts that one of the parties to the judgment had died before it was rendered, or was an infant and no guardian had appeared

or been appointed, or was a *feme covert*, and the like, or error in the process through default of the clerk.' It was further said that there had grown up in the courts of law a tendency to apply to their control over their own judgments some of the principles of courts of equity which go further in administering summary relief than the old-fashioned writ of *coram nobis* did. 'This practice has been founded in the courts of many of the States on statutes which conferred a prescribed and limited control over the judgment of a court after the expiration of the term at which it was rendered. In other cases the summary remedy by motion has been granted as founded in the inherent power of the court over its own judgments and to avoid the expense and delay of a formal suit in chancery. It can easily be seen how this practice is justified in courts of the States where a system has been adopted which amalgamates the equitable and common law jurisdiction in one form of action, as most of the rules of procedure do.' In many States the difference in forms of action and methods of procedure in law and equity has been abolished, and the decisions in such States with reference to the relief which may be obtained on motion and the method of procedure throw no light on the practice at common law. No cases have been cited to us which carry the right to relief upon a writ of error *coram nobis* at common law beyond the cases specified by Tidd and the other writers which have been cited.'' As pointed out in *Frank v. Newburger, supra,* the practice and procedure in common law and in suits in equity have been, in part, amalgamated by the Civil Practice Act. That act should be given a broad and liberal construction. Plaintiff argues that there is no authority for filing a motion such as is presented here, otherwise than under section 72. The petition did not purport to be presented under the authority of section 72.

On turning to the six points assigned by plaintiff in his written motion, we observe that point 1 calls atten-

tion to the fact that the petition to vacate was presented after the 30-day period from the entry of the judgment; that point 2 calls attention to the fact that on the face of the petition it appears from the sheriff's return that he served a summons on the defendant by leaving a copy thereof with one admittedly an agent of defendant; that point 3 states that the record shows that the return of the sheriff is in harmony with the findings of the court in its judgment; that point 4 states that the defendant is attempting to contradict the return of the sheriff on the summons after the 30-day period had passed. The first three points merely call attention to facts in the record. As to point 4, we observe that the court in a separate chancery proceeding has the right to find from evidence *dehors* the record that the return is erroneous. Point 5 states that the petition does not show that the alleged false return was procured by fraud of the plaintiff. It is true that no fraud is claimed. We have heretofore pointed out that in equity the court may grant relief against a false return even where there is no claim of fraud. The 6th and last point states that the trial court was without jurisdiction to vacate and set aside the judgment after the 30-day period following the judgment because of the false return by the sheriff when that return is in harmony with the findings of the court in its judgment that the defendant was duly served. Section 45 of the Civil Practice Act (sec. 169, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.045]) requires that a motion serving the office of a demurrer shall point out specifically the defects complained of. None of the six points raises a question as to the right of the court to treat the petition in the same way as a complaint in chancery. Under section 12, article 6 of the constitution of this State, the circuit court has original jurisdiction of all causes in law and equity. Hence, the circuit court had jurisdiction of the subject matter. It also had jurisdiction of both parties at the time the motion was

made. We are of the opinion that the action of the court in taking jurisdiction of the petition is in harmony with the spirit of the Civil Practice Act.

Plaintiff also argues that the defendant's petition does not set out a meritorious defense to plaintiff's action. We have carefully examined the part of the petition that purports to set up the defense and are of the opinion that it is adequate. The petition avers that at the time of the accident the defendant was in the exercise of the highest degree of diligence in the operation and management of the elevator; that the operator was not guilty of any carelessness or negligence, that the elevator was in good mechanical condition, that the defendant was not guilty of any wilful or wanton act, and that plaintiff was guilty of contributory negligence. Plaintiff also insists that the affidavits in support of defendant's petition are insufficient. This point is without merit.

Before its briefs were filed, defendant moved to dismiss the appeal, and ruling on the motion was reserved to hearing. Defendant urges that the order vacating the judgment is neither a final or appealable order and cites the case of *Cramer v. Illinois Commercial Men's Ass'n*, 260 Ill. 516, in support of its argument, that if a court sets aside or vacates a judgment otherwise than under the motion substituted for the writ of error *coram nobis*, the order is interlocutory and the parties must await a final judgment after the case has been tried on the merits before an appeal will lie. That is undoubtedly the rule where the court vacates a judgment within the 30-day period. In the case at bar, however, defendant filed a petition which is the equivalent of a complaint in equity. It cannot be doubted that had the defendant filed a complaint in equity and procured the entry of a decree in its favor, the plaintiff herein would have a clear right to appeal from the decree. We are of the opinion that under the circumstances disclosed by the record the plaintiff herein had a right to appeal from the order vacating the judg-

ment. Therefore, the motion to dismiss the appeal is denied.

For the reasons stated, the order of the trial court, which vacated the default judgment, should be and it is affirmed.

*Order affirmed.*

HEBEL, J., concurs.
DENIS E. SULLIVAN, P. J., dissents.