WILLIAM HOPKINS, Plaintiff-Appellant, v. ROGER F. HOLT, Defendant-Appellee.—WILLIAM HOPKINS, Plaintiff-Appellee, v. JACKSON PARK HOSPITAL FOUNDATION *et al.*, Defendants-Appellants.

First District (3rd Division) Nos. 1—87—1900, 1—87—2025, 1—87—2069, 1—87—2078 cons.

Opinion filed February 21, 1990.

Wildman, Harrold, Allen & Dixon, of Chicago, for appellant Roland Lim.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago, for appellant Robert J. Sawchyn.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant Jackson Park Hospital Foundation.

John J. Kakacek, of Stack & Filpi, Chartered, of Chicago, for Roger F. Holt.

Paul B. Episcope, Ltd., of Chicago, for William Hopkins.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Plaintiff, William Hopkins, brought a medical malpractice action against defendants, Jackson Park Hospital Foundation, Roger F. Holt, M.D., Ronald Lim, D.P.M., Mercy Hospital and Medical Center, and Robert J. Sawchyn, M.D. After the action was dismissed because of a settlement, plaintiff was informed that Dr. Holt's insurer had declared bankruptcy. Plaintiff brought a declaratory judgment action against Dr. Holt in an effort to obtain the settlement amount from him personally, but summary judgment was granted in favor of Dr. Holt.

Plaintiff then obtained a vacatur of the dismissal of the malpractice action. Defendants have appealed from the vacatur of the dismissal, and plaintiff has appealed from the granting of Dr. Holt's motion for summary judgment.

Plaintiff alleged in his medical malpractice action that he had been a patient at Jackson Park Hospital, where Drs. Holt and Lim performed two surgeries on his foot. Subsequently plaintiff was treated at Mercy Hospital by Dr. Sawchyn. Mercy Hospital filed a motion for summary judgment which was granted. The action against the remaining defendants was settled for $101,000, and on February 21, 1985, it was dismissed with prejudice.

On May 14, 1985, plaintiff filed a complaint for declaratory judgment seeking a judgment against Dr. Holt for $100,000 of the settlement. Plaintiff alleged that he agreed to accept in settlement $100,000 from Dr. Holt and $1,000 from Jackson Park. Plaintiff, Jackson Park, Dr. Holt, and Dr. Holt's insurer, Bercanus Insurance Company (the insurer), were the parties to the written settlement agreement. In the settlement agreement in consideration of "the payment by the Insurance Carrier for and on behalf of Holt and Jackson Park Hospital to and on behalf of Hopkins," it was agreed that an order dismissing the malpractice action would be obtained. The agreement further stated that upon execution, the insurer "for and on behalf of Holt" would deliver a check of $50,000 to plaintiff and to his attorney. Jackson Park on its own behalf would deliver a check for $1,000, and the insurer "for and on behalf of Holt" would deliver a check for $50,000 45 days after execution of the agreement.

The declaratory judgment complaint also alleged that on April 8, 1985, plaintiff was advised by James Murray, Dr. Holt's counsel, that Dr. Holt's insurer was in liquidation and that no settlement payment would be made. Dr. Holt denied in his third amended answer that he personally offered plaintiff $100,000 in settlement. Dr. Holt alleged that on January 24, 1985, Murray informed plaintiff's attorney that the insurer would tender its policy limits of $100,000 to plaintiff in return for a release of all claims against Dr. Holt. He also alleged that the parties and their attorneys intended that plaintiff would be paid the $100,000 only by the insurer and that Dr. Holt would not contribute any of his personal funds to the settlement.

Plaintiff moved for summary judgment in the declaratory judgment action. Plaintiff's attorney stated in his supporting affidavit that he was not informed of any limitation or restriction on Murray's authority to negotiate a settlement for Dr. Holt. Dr. Holt swore in his affidavit in opposition that he did not expect, intend or knowingly

agree to pay any portion of the settlement. He expected and intended that only the insurer would be responsible for the settlement. He would not have settled if he had known that he could have been responsible for paying any portion of the settlement.

Plaintiff's motion for summary judgment was denied, apparently at the hearing on November 13, 1986, although the order was entered on November 21, 1986, and on December 8, 1986, Dr. Holt filed his motion for summary judgment and argued that an attorney could not bind a client to a settlement agreement unless the client knew of and specifically agreed to the terms of the settlement. Dr. Holt argued that he never authorized Murray to bind him to pay the settlement amount but specifically directed him to settle the matter on terms providing that he was not to be bound to pay the settlement amount. Dr. Holt's motion was granted on May 22, 1987, and plaintiff appeals from that order.

Plaintiff filed a petition pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) to vacate the order of February 21, 1985, dismissing the malpractice action. The petition in the record does not show the date of filing, but the parties apparently agree that it was filed November 19, 1986, which was six days after the denial of plaintiff's motion for summary judgment in the declaratory judgment action. Plaintiff alleged that he had not received any of the settlement funds and argued that, therefore, there was no consideration for the dismissal order. Plaintiff's attorney's supporting affidavit stated that after 30 days from the dismissal, plaintiff's attorney was advised for the first time that the insurer was in liquidation and that the settlement funds would not be paid. Jackson Park alleged in its response to the petition that it drew a $1,000 check payable to plaintiff and his attorney and mailed it. On May 22, 1987, plaintiff's petition to vacate the order of dismissal was granted and the case was reinstated as to all parties.

Plaintiff appeals from the entry of summary judgment in favor of Dr. Holt in the declaratory judgment action. He argues that: (1) the settlement agreement was valid and Dr. Holt should be bound by it; (2) Murray had the authority to settle the malpractice action as Dr. Holt's agent and no limitation on his authority was communicated to plaintiff; and (3) no mutual mistake of fact existed upon which the settlement agreement could be reformed.

The plaintiff relies on *Hill v. Chicago Housing Authority* (1974), 17 Ill. App. 3d 65, 308 N.E.2d 45, to support his argument that an attorney of record for a defendant can enter into a settlement and dismissal of a case that binds the client to pay the amount of the set-

tlement even though the client never gave prior approval and the insurer became insolvent. The Chicago Housing Authority in that case argued that the settlement was not binding because it never authorized settlement or subsequently ratified it and that a subsequent "change in circumstances" (the insurer's insolvency) required that the settlement be set aside. The Chicago Housing Authority from the beginning, however, did not say anything to its attorney and allowed the attorney a free hand to handle and settle the case any way the attorney saw fit. In the instant case, Dr. Holt hired a private attorney to protect him. His private attorney notified his attorney of record to settle only on the condition that Dr. Holt would not be personally liable. The holding in *Hill* therefore would not be binding in this case.

■ Plaintiff alleged that Dr. Holt's attorney of record, Murray, had apparent authority to bind Holt personally to pay the settlement. Where attorneys negotiate settlements containing terms their clients did not approve, Illinois courts hold that the clients are not bound by those terms. In the case of *City of Des Plaines v. Scientific Machinery Movers, Inc.* (1972), 9 Ill. App. 3d 438, 292 N.E.2d 154, the defendant never agreed to a term in the oral settlement which required it to discontinue its business. The court held:

> "In the case at bar, we believe that the discretion of the court [to refuse to vacate the decree] was substantially limited by the established rule of law that an attorney employed to defend a suit has no authority to compromise, to give up any right of his client, or to consent to judgment against his client without the express consent or authorization of that client."
> *Des Plaines*, 9 Ill. App. 3d at 444.

■ In the instant case, Murray, the attorney of record, had no authority to bind Dr. Holt personally to pay the settlement amount of $100,000. The entry of summary judgment in favor of Dr. Holt was proper.

In addition, the settlement agreement clearly stated that the action would be dismissed in exchange for the payment by the insurer. It did not provide that Dr. Holt personally was to pay the settlement and did not make him a guarantor of the insurer's promise to pay. Plaintiff agreed to release his claims in exchange for $100,000 from the insurer and $1,000 from Jackson Park.

Drs. Lim and Sawchyn argue that plaintiff failed to act with due diligence in the malpractice action because he did not vigorously pursue claims against them, because he did not attempt to settle with them, because they were not parties to the settlement agreement, and because there was no inquiry by him regarding the insurer's financial

security prior to the settlement.

All defendants argue that plaintiff lacked due diligence in filing his section 2—1401 petition because he chose to enforce the settlement agreement in the declaratory judgment action and did not file the section 2—1401 petition until about 18 months after the dismissal. Drs. Lim and Sawchyn argue that a section 2—1401 petition may be granted even where there was a lack of due diligence but that equitable and policy considerations demanded denial of plaintiff's petition.

Section 2—1401 provides relief from final orders and judgments after 30 days from their entry. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401.) Due diligence must be demonstrated in presenting the defense or claim in the original action and in filing the petition. *Lazzara v. Dreyer Medical Clinic* (1983), 120 Ill. App. 3d 721, 724, 458 N.E.2d 958.

■ Plaintiff acted with due diligence in pursuing his malpractice action. Drs. Lim and Sawchyn attempt to impose a new requirement of vigorous pursuit of claims or settlement with all defendants. Plaintiff was permitted to attempt to settle with fewer than all defendants, and no defendant objected when the settlement agreement was made. Plaintiff also was not bound to inquire about the insurer's financial condition prior to dismissing his action. Dr. Roland Lim and Dr. Robert Sawchyn benefited when they were dismissed from the case without payment of any money. When the dismissal was vacated pursuant to section 2—1401, these defendants were not prejudiced thereby. Even if they had paid $1,000 in settlement as Jackson Park did, they would not have been prejudiced by the vacating of the dismissal.

In addition, Dr. Holt argues that plaintiff should have prayed in the declaratory judgment action in the alternative for a vacatur of the dismissal. Jackson Park argues that plaintiff failed to diligently pursue relief from the dismissal because the declaratory judgment action was not a pursuit of plaintiff's contract rights against Jackson Park.

■ Plaintiff's counsel swore in an affidavit in the declaratory action that he was advised of the bankruptcy after the expiration of 30 days from the dismissal of the malpractice action. Even assuming *arguendo* that an action's dismissal could be vacated in a separate declaratory judgment action, plaintiff could not have obtained such relief. A section 2—1401 petition is the only method of relief from a final and appealable order after 30 days, as the trial court loses jurisdiction after 30 days (*Slavick v. Michael Reese Hospital & Medical Center* (1980), 92 Ill. App. 3d 161, 166, 415 N.E.2d 1060), and the petition must be filed in the same proceeding in which the order was

entered (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401(b)).

█ Plaintiff exercised due diligence in filing this section 2—1401 petition only a few days after the entry of summary judgment in favor of Dr. Holt in the declaratory judgment action. There was no reason for plaintiff to vacate the dismissal earlier against Jackson Park, which paid its portion of the settlement, because it was not until the entry of summary judgment that it was determined that the settlement agreement could not be enforced against Dr. Holt.

█ The facts which must be alleged in a section 2—1401 petition are not those which form the basis for the original action but those which allegedly entitle petitioner to the relief. (See *Windmon v. Banks* (1975), 31 Ill. App. 3d 870, 873-74, 335 N.E.2d 116 (interpreting section 72 (now section 2—1401)).) Therefore plaintiff's petition was not deficient, as Drs. Lim and Sawchyn argue, for failing to allege that he had a meritorious claim against them. A plaintiff's section 2—1401 petition to vacate dismissal need not reiterate the contentions contained in the complaint. (See *Windmon*, 31 Ill. App. 3d at 874.) Furthermore, plaintiff's petition sufficiently alleged the facts surrounding the breach of the settlement agreement which allegedly entitled him to relief.

Drs. Lim and Sawchyn argue that the post-dismissal event of the insurer's bankruptcy was an impermissible basis for section 2—1401 relief and that plaintiff's petition failed to allege or prove that he had either a meritorious claim against them or that the insurer's bankruptcy permitted plaintiff to vacate the dismissal. Jackson Park Hospital argues that the section 2—1401 petition should have been denied because plaintiff did not show fraud or mistake.

There is disagreement as to whether a section 2—1401 petition can be based on events that occurred subsequently to the judgment. (*Prairie Material Sales, Inc. v. White Diamond, Inc.* (1987), 157 Ill. App. 3d 779, 783, 510 N.E.2d 1236.) Some courts have held that a section 2—1401 petition must present new facts that relate to matters which antedate the judgment and not those arising after judgment. *Chovan v. Floor Covering Associates, Inc.* (1987), 159 Ill. App. 3d 447, 450, 512 N.E.2d 801; *Mohr v. Pridemore* (1986), 151 Ill. App. 3d 341, 344, 502 N.E.2d 754; *Gimroth v. Ray* (1981), 98 Ill. App. 3d 633, 635, 424 N.E.2d 934; *Union National Bank & Trust Co. v. Green* (1979), 80 Ill. App. 3d 32, 34, 399 N.E.2d 313; *Prendergast v. Rush-Presbyterian-St. Luke's Medical Center* (1979), 78 Ill. App. 3d 538, 542, 397 N.E.2d 432; *County Board of School Trustees v. Association of Franciscan Fathers* (1977), 49 Ill. App. 3d 686, 701-02, 364 N.E.2d 691 (assuming *arguendo* the *Russell* rule); *Goggin v. Fox Valley Con-*

*struction Corp.* (1977), 48 Ill. App. 3d 103, 106-07, 365 N.E.2d 509.

These cases rely directly or indirectly upon *Russell v. Klein* (1974), 58 Ill. 2d 220, 225, 317 N.E.2d 556. Defendants in *Russell* had obtained section 72 (now section 2—1401) relief from a judgment by confession on the basis that the judgment had been satisfied. The court stated that section 72 was available for relief based on matters which antedated the rendition of the judgment and not those which arose subsequently. (*Russell*, 58 Ill. 2d at 223-24.) The court held that section 72 was not the only remedy for relief from a judgment on grounds of discharge, payment or satisfaction. *Russell*, 58 Ill. 2d at 225.

In *Saeed v. Bank of Ravenswood* (1981), 101 Ill. App. 3d 20, 427 N.E.2d 858, defendants challenged a section 72 petition to vacate a dismissal order entered for plaintiff's failure to comply with discovery requests because it relied upon a fact which occurred after the entry of judgment, *i.e.*, plaintiff's subsequent return to the country. The court held that the *Russell* statement that section 72 relief based on subsequent matters was unavailable had been taken out of context and only meant that the common law writ was encompassed by section 72 to the extent that the relief sought pertained to matters in existence before the judgment so that the two-year limitation did not apply to matters arising subsequently to judgment. (*Saeed*, 101 Ill. App. 3d at 26.) The court also stated that some courts had considered facts occurring subsequent to judgment, such as plaintiff's concealment of the entry of judgment or delay in executing on a default judgment. (*Saeed*, 101 Ill. App. 3d at 26.) The court found that the case involved an aspect of the scope of statutory relief different from *Russell* and concluded that section 72 was flexible enough for plaintiff to vacate the dismissal.

In further support of an interpretation of section 2—1401 permitting vacatur of a dismissal based upon the breach of the settlement agreement is the rule that such a breach permits the nondefaulting party to elect either to sue to enforce the settlement agreement or to treat the agreement as rescinded and to sue upon the original debt. (See, *e.g.*, *Zager v. Gubernick* (1965), 205 Pa. Super. 168, 173-74, 208 A.2d 45, 49; *Shield Co. v. Williamson* (Texas 1962), 355 S.W.2d 811, 813; *Wilson v. Bogert* (1959), 81 Idaho 535, 543, 347 P.2d 341, 346; *Whitfield v. Whittington* (1953), 34 Del. Ch. 34, 99 A.2d 196, 197; and other cases cited in 15A C.J.S. Compromise & Settlement §46, at 275 n.89 (1967).) The action that was dismissed because of the settlement agreement may be reinstated (*Pacheco v. Delgardo* (1935), 46 Ariz. 401, 407, 52 P.2d 479, 481) if the breach of the settlement agreement

was material (*Kapco Manufacturing Co. v. C & O Enterprises, Inc.* (N.D. Ill. 1985), 605 F. Supp. 253, 256). See also *Mederacke v. Becker* (1970), 129 Ill. App. 2d 434, 438-39; 263 N.E.2d 257 (although party deviated from time schedule for payment, there was virtually full compliance with settlement agreement providing for partial payment of judgment in full satisfaction of liability so that reinstatement of original judgment was not warranted).

■ We hold that section 2—1401 may be used to vacate a dismissal that was entered in consideration of a promise to pay a settlement when the promise was materially breached. We further hold that plaintiff was diligent in pursuing to vacate the dismissal as to all parties.

■ The proper procedure to enforce a settlement agreement when the party refuses to pay is to file an action which is essentially an action for breach of contract. (*Brigando v. Republic Steel Corp.* (1989), 180 Ill. App. 3d 1016, 1021 n.1, 536 N.E.2d 778, 782 n.1.) Plaintiff's declaratory action was an attempt to enforce the settlement agreement, but the issue whether the doctrine of election of remedies prevented plaintiff from afterwards moving to vacate the dismissal arises. The doctrine is inapplicable where no threat of double recovery exists, defendant is not misled and has not changed his position in reliance on plaintiff's conduct, and there is nothing about the action that would serve to bar the instant remedy because of *res judicata*. (*Casati v. Aero Marine Management Co.* (1980), 90 Ill. App. 3d 530, 536-37, 413 N.E.2d 122.) By attempting to enforce the settlement agreement against a party who was not liable for the owed settlement amount, plaintiff did not make an election that prevented him from treating the settlement agreement as rescinded and from moving to vacate the dismissal. See *Casati*, 90 Ill. App. 3d at 537 (prior unsuccessful action for breach of contract did not bar subsequent action under theory of anticipatory breach).

The judgment of the circuit court is affirmed.

FREEMAN and WHITE, JJ., concur.