FIRST DIVISION
February 21, 2006

No. 1-04-2865

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 84 C 13135 |
| | ) | |
| STANLEY HOWARD, | ) | Honorable |
| | ) | John A. Wasilewski, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GORDON delivered the opinion of the court:

In 1986, defendant Stanley Howard was convicted of armed robbery, rape and home invasion. He was sentenced to 50 years, to be served consecutively to a previously imposed sentence of 28 years for another armed robbery. In 1987, defendant was convicted of murder and sentenced to death. Defendant served 16 years on Death Row before he was pardoned on January 10, 2003, by then-Governor Ryan on the grounds of actual innocence. On December 24, 2003, less than a year after being pardoned, defendant filed a postconviction petition pursuant to section 2-1401 of the *Code of Civil Procedure  the Code* (735 ILCS 5/2-1401 (West 2002)), seeking a reduction in his sentence for armed robbery, rape and home invasion. In his petition, defendant asserted that he was entitled to a reduction because he served 16 years of his sentence under harsh Death Row conditions and endured extreme mental anguish from facing execution for a crime he did not commit. The circuit court concluded that it

No. 1-04-2865

lacked jurisdiction to modify defendant's sentence and dismissed the petition with prejudice. For the reasons that follow, we affirm.

ANALYSIS

On appeal, defendant contends that his petition invokes the broad equitable powers of the circuit court to prevent enforcement of a judgment when enforcement would be unjust. The State, on the other hand, takes a much more restrictive view and argues that the circuit court can only grant relief where the petitioner brings to its attention evidence which was in existence at the time of judgment and which, if then known, would have precluded its entry. The sole issue on appeal is whether section 2-1401 grants a circuit court equitable powers to reduce a previously imposed sentence, where the petition is based on a postjudgment change in the circumstances of the defendant's confinement. We review this question of law *de novo*. See City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998).

Section 2-1401, formerly section 72 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 72), provides a comprehensive statutory procedure by which final orders, judgments, and decrees may be vacated after 30 days from their entry. Smith v. Airoom, Inc., 114 Ill. 2d 209, 220, 499 N.E.2d 1381, 1386 (1986). Subsection (a) of section 2-1401 states:

"*Relief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section. Writs of error coram nobis and coram vobis, bills of review and bills in the nature of bills of review are abolished. All relief*

2

*heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered. Except as provided in Section 6 of the Illinois Parentage Act of 1984, there shall be no distinction between actions and other proceedings, statutory or otherwise, as to availability of relief, grounds for relief or the relief obtainable.*" 735 ILCS 5/2-1401(a) (West 2002).

Although section 2-1401 is characterized as a civil remedy, its powers extend to criminal cases. People v. Haynes, 192 Ill. 2d 437, 460-61, 737 N.E.2d 169, 182 (2000).

The State contends that our supreme court never wavered in its requirement that newly discovered evidence forming the basis of a section 2-1401 petition has to have been in existence at the time of the judgment. In support, the State relies on language in Haynes, 192 Ill. 2d at 463, quoting Russell v. Klein, 58 Ill. 2d 220, 225, 317 N.E.2d 556, 559 (1974) ("section 2-1401 is available 'for relief based on matters which antedate the rendition of the judgment and not those which arise subsequent to its rendition' "), People ex rel. Carey v. Rosin, 75 Ill. 2d 151, 158, 387 N.E.2d 692, 695 (1979) ("Section 72 is not available to attack a judgment on the grounds that evidence which did not even exist at the time of that judgment (*i.e.*, defendant's postconviction behavior) should have been presented"), and People v. Berland, 74 Ill. 2d 286, 313-14, 385 N.E.2d 649, 661-62 (1978), quoting Ephraim v. People, 13 Ill. 2d 456, 458, 150 N.E.2d 152, 153 (1958) ("A section 72 proceeding is the forum in which 'to correct all errors of fact occurring in the prosecution of a cause, unknown to the petitioner and the court at the

3

time of trial, which, if then known, would have prevented the judgment' "). The State further points out that in Haynes, the supreme court rejected the defendant's section 2-1401 petition challenging a finding of fitness to stand trial, where the defendant relied on evidence that he was diagnosed with and treated for mental illness after he was convicted and sentenced. Haynes, 192 Ill. 2d at 463. The supreme court explained that such postjudgment evidence does not provide a proper basis for relief because it "did not exist at the time of defendant's fitness hearing *** and therefore could not have been presented to the trial court for its consideration during those proceedings." Haynes, 192 Ill. 2d at 463. Thus, the State would contend that new evidence which was not in existence at the time of the judgment cannot be used as the basis of a section 2-1401 petition—even where such evidence sheds new light upon relevant prejudgment facts or conditions and thus, in hindsight, calls into question the propriety of the judgment. Obviously, if the State is correct in its contention that the supreme court's decisions unequivocally require newly discovered evidence to have been in existence at the time of trial, we would have to conclude that the circuit court here cannot grant defendant relief because defendant relies on the conditions of his Death Row confinement—evidence which was not in existence when the trial court imposed the sentence for armed robbery, rape and home invasion.

Defendant, however, disputes that the supreme court categorically foreclosed consideration of evidence which arose after the judgment. Defendant initially cites to broad language in People v. Lawton, 212 Ill. 2d 285, 297, 818 N.E.2d 326, 334 (2004), wherein the supreme court stated that "[o]ne of the guiding principles in the

administration of section 2-1401 relief is that the petition invokes the equitable powers of the circuit court to prevent enforcement of a judgment when doing so would be unfair, unjust, or unconscionable." In Lawton, our supreme court also noted that in defining the relief available, the General Assembly used the broadest possible terms. See Lawton, 212 Ill. 2d at 297. Because "[r]elief should be granted under section 2-1401 when necessary to achieve justice," and because the statute is to be construed liberally, the supreme court expressed that it is improper to impose restrictions that "the language of the statute does not include and that the purposes of the statute cannot accommodate." Lawton, 212 Ill. 2d at 298-99. Defendant points out that section 2-1401, on its face, contains no language limiting the circuit court to considering only petitions predicated on events that occurred prior to the judgment.

Further, defendant characterizes the language relied upon by the State as out-of-context *dicta*. With respect to Haynes, defendant asserts that the supreme court disallowed the use of postjudgment evidence because it was not probative of the defendant's mental state at the time of the fitness hearing and, therefore, could not cast doubt upon the trial court's finding of fitness. Defendant posits that Haynes did not suggest that evidence that comes into being after the judgment and is probative of the judgment's propriety can never be considered. In this regard, we note that in its earlier decision in People v. Hinton, 52 Ill. 2d 239, 245, 287 N.E.2d 657, 660 (1972), a case similar to Haynes, the supreme court did indeed qualify that it "[did not] intend to suggest that subsequent occurrences can never be considered in determining merits of a section 72 petition."

No. 1-04-2865

Defendant next points to the decision of this court in <u>Saeed v. Bank of Ravenswood</u>, 101 Ill. App. 3d 20, 26, 427 N.E.2d 858 (1981), wherein we held that a circuit court may consider facts occurring subsequent to the judgment "as part of the total circumstances surrounding the *** judgment" and stated the following regarding the language from <u>Russell</u> relied upon by the State:

"[R]eliance on this quotation demonstrates the danger inherent in taking a statement out of context and applying it in a strictly literal sense to a different situation. The main issue in <u>Russell</u> was whether section 72 should be construed as the exclusive remedy for all types of postjudgment relief, such that the two-year [period of] limitation would likewise apply.

* * *

*** We believe a fair reading of this statement, in context, is that the writ of *audita querela* is encompassed by section 72 to the extent that the relief sought pertains to matters in existence before the judgment. Where the judgment debtor seeks relief based on matters arising subsequent to judgment, however, the two-year limit of section 72 is inapplicable. ***

We believe that the <u>Russell</u> court's concern was to ensure that the equitable principles of section 72 were not controverted by a narrow construction that would result in the elimination of any relief which was formerly available under the common law writs." <u>Saeed</u>, 101 Ill. App. 3d at 25-26.

Lastly, with respect to <u>Rosin</u>, which shall be discussed in full detail below,

6

defendant characterizes the language relied upon by the State as *dictum* which was not intended to have any application in a context such as here.  While, for the reasons explained below, we disagree with defendant's treatment of Rosin, we would tend to agree that the cases cited by the State are not conclusive as to whether newly discovered evidence may be relied upon in a section 2-1401 petition if such evidence did not exist at the time the judgment was entered.  For instance, this court has already recognized that the language in Russell that a section 2-1401 petition must be "based on matters which antedate the rendition of the judgment" is broad enough to permit consideration of evidence coming into being after the judgment if that evidence related back to matters antedating the judgment.  See Chovan v. Floor Covering Associates, Inc., 159 Ill. App. 3d 447, 450, 512 N.E.2d 801, 803 (1987); Hopkins v. Holt, 194 Ill. App. 3d 788, 795-96 551 N.E.2d 400, 405 (1990).  Similarly, the language in Berland and Ephraim—that the newly discovered evidence, if known at trial, must be such that would have precluded the judgment—does not purport to prohibit consideration of evidence arising after the rendition of the judgment.

Not surprisingly, there is a split of authority within this court as to whether such evidence may be considered.  See Doctor's Associates, Inc. v. Duree, 319 Ill. App. 3d 1032, 1047 n.5, 745 N.E.2d 1270, 1283 n.5 (2001).  In addition to the language in Lawton, defendant relies upon Department of Conservation v. Cipriani, 202 Ill. App. 3d 986, 561 N.E.2d 739 (1990) (it is not improper to consider a postjudgment study of the property conducted by the Federal Emergency Management Agency (FEMA), where the defendants' property was being acquired by eminent domain and the compensation

7

to the defendants was based on a preceding study), and the above-mentioned decisions of this court in Hopkins and Saeed.  An analysis of the facts in Cipriani, Hopkins and Saeed may prove helpful in structuring the limits of section 2-1401.

In Cipriani, the pertinent issue in the original action was whether the defendants' land, which was being acquired by eminent domain, was in a flood plain.  The plaintiff's experts relied on a FEMA study which concluded that the land was in a flood plain and could not be built on.  The jury relied on that evidence and awarded the defendants significantly lower compensation than they had sought.  However, the conclusions of the FEMA study were admitted to be incorrect in a subsequent, postjudgment FEMA study.  Armed with this new evidence, the defendants brought a section 2-1401 petition, attacking the original judgment on the grounds of an error of fact in existence at the time the judgment was rendered.  Cipriani, 202 Ill. App. 3d at 988-89.  In other words, the defendants in their section 2-1401 petition raised new evidence which, although not in existence at the time of the trial, exposed an error of fact upon which the jury relied.  This court held that the new evidence formed a proper basis for the defendants' petition and reversed the petition's dismissal.  Cipriani, 202 Ill. App. 3d at 992.

In Hopkins, the plaintiff sought to set aside an order of dismissal due to settlement.  The basis for the petition was that the settlement agreement failed for lack of consideration.  To that effect, a supporting affidavit of the plaintiff's attorney stated that 30 days after the dismissal he was advised that the defendant's insurer, which had agreed to pay the entire judgment, was in liquidation and the settlement funds would not be paid.  Hopkins, 194 Ill. App. 3d at 792.  The postsettlement breach due to the

8

No. 1-04-2865

insurer's liquidation was new evidence not in existence at the time of the judgment. This court nevertheless upheld the order of the circuit court vacating the judgment. Hopkins, 194 Ill. App. 3d at 797.

Lastly in Saeed, the plaintiff's negligence action was dismissed with prejudice as a sanction for his failure to appear for a deposition within the time specified by the court. The circuit court was aware that the plaintiff was out of the country and noted that there was no way of determining when or if the plaintiff would return. Some five months after the order of dismissal was entered, the plaintiff, who had returned to Illinois, sought to vacate the order. Saeed, 101 Ill. App. 3d at 22-23, 28-29. This court upheld the trial court's decision to vacate the dismissal and reinstate the plaintiff's action. Saeed, 101 Ill. App. 3d at 29.

Under the facts of this case, we are not compelled to choose between the State's narrow construction—which would confine the basis of section 2-1401 only to evidence in existence at the time of the judgment—and defendant's line of cases because, arguably, even defendant's cases may be construed to only permit reliance on new evidence which is relevant to circumstances or conditions that predate the judgment. Defendant here, however, is relying upon circumstances and conditions that were not in existence at the time of the sentencing and only arose afterwards. While there is language in defendant's cases that would indicate that such reliance is permissible, on their facts these cases still involve issues that relate to prejudgment conditions. This is most evident in Cipriani, where the new evidence, even though it came about by the means of a postjudgment study, pertained to the condition of the land at the time of the

9

judgment.  Although perhaps more attenuated, this relationship to a prejudgment matter is also present in Hopkins, where the plaintiff questioned the validity of the judgment because the judgment was conditioned upon a settlement for which consideration proved to be lacking.  Similarly in Saeed, the new fact of the plaintiff's return and readiness to proceed with the lawsuit may be seen as relating to the propriety of earlier sanctions and dismissal (in a sense that the plaintiff sought to correct the trial court's erroneous perception that he failed to diligently prosecute his action).

However, to the extent that there is language in Cipriani, Hopkins and Saeed that would suggest it is permissible to base a section 2-1401 petition on circumstances or conditions arising after the judgment, which are unrelated to those in existence prior to the judgment, we would have to reject such a rule.  As shall be discussed below, the extension of section 2-1401 urged by defendant is contrary to the explicit pronouncement of our supreme court in Rosin and inherently inconsistent with the dispositions of Rosin and its follow-up decision, People ex rel. Carey v. Collins, 81 Ill. 2d 118, 405 N.E.2d 774 (1980).  Such an extension falls outside the limits of the common-law antecedents upon which section 2-1401 purports, on its face, to be grounded (see 735 ILCS 5/2-1401(a) (West 2002)).  Moreover, defendant's position challenges the jurisdictional separation between the judiciary and the executive in the exercise of executive clemency—the separation that is to be preserved in adopting section 2-1401 to criminal cases.  As shall be demonstrated below, this division of power has been preserved under analogous provisions in other jurisdictions and has never been repudiated in Illinois.

10

In the instant case, defendant's section 2-1401 petition is directed to an issue of fact, namely, that he unjustly served 16 years on Death Row. As such, defendant's petition is analogous to a common-law writ of error *coram nobis*. Consequently, a brief examination of the subject matter limits of this writ is helpful.

At common law, writs of error *coram nobis* served to correct errors of fact; bills of review and bills in the nature of bills of review served to bring to the court's attention errors of law upon the face of the decree, to establish newly discovered evidence, and to show fraud in the procurement of the decree. Lawton, 212 Ill. 2d at 307 (Fitzgerald, J., dissenting, joined by Thomas, J.). The origin of a writ of error *coram nobis* has been succinctly summarized by this court in Nikola v. Campus Towers Apartment Building Corp., 303 Ill. App. 516, 523-24, 25 N.E.2d 582, 586 (1940):

> "The writ of error *coram nobis* was an original writ issued out of chancery to the judges of the court of King's Bench, commanding them to examine the record in a particular case. The earliest known use of the writ was to disclose misprision of the clerk, infancy, coverture, or the death of a party. The writ was often used as a procedural device to prevent a failure of justice, since the House of Lords and Exchequer Chamber would review only errors of law. The judges of the King's Bench could relieve against a miscarriage of justice by recognizing the writ to correct errors of fact only."

In Illinois, *coram nobis* proceedings were used for the purpose of obtaining a review and correction of a judgment by the same court which rendered it, with respect to some

11

error of fact affecting the validity and regularity of the judgment. See <u>People ex rel.</u>

<u>Waite v. Bristow</u>, 391 Ill. 101, 116-17, 62 N.E.2d 545, 553 (1945). Naturally, the writ

was not without jurisdictional limitations:

> " 'The unvarying test of the writ of *coram nobis* is mistake or lack of
> knowledge of facts inhering in the judgment itself. *It has never been*
> *granted to relieve from consequences arising subsequently to the*
> *judgment.*' " (Emphasis added.) <u>Bristow</u>, 391 Ill. at 119, quoting <u>Collins v.</u>
> <u>State</u>, 66 Kan. 201, 202, 71 P. 251, 251 (1903).

The same rule applied under section 72 of the Civil Practice Act:

> "A [statutory] petition in the nature of a writ of error *coram nobis* \*\*\*
> has been substituted for the common-law *coram nobis* writ, one of its
> functions being to correct all errors of fact occurring in the prosecution of a
> cause, unknown to the petitioner and court at the time of trial, which, if
> then known, would have prevented the judgment." <u>Ephraim</u>, 13 Ill. 2d at
> 458.

Our supreme court, in the cases of <u>Rosin</u> and <u>Collins</u> has since confirmed that

the rule at issue—mandating that a section 2-1401 petition be based on matters

antedating the judgment—is jurisdictional in nature. In <u>Rosin</u>, the trial court imposed on

the defendant a 60-day sentence of imprisonment, but stayed the sentence's execution

pending appeal. After his appeal was dismissed for want of prosecution, the defendant

filed a motion in the circuit court to transfer his case to the judge who had originally

sentenced him in order to give that judge an opportunity to reconsider the sentence.

No. 1-04-2865

The motion to transfer was granted, and the original judge, based on evidence of the defendant's good postconviction behavior, modified the sentence, in essence, to one year's probation. The State then brought a *mandamus* action to compel the judge to withdraw the modification of the sentence, arguing that the judge was without authority to act. Rosin, 75 Ill. 2d at 154-55. The supreme court agreed, holding that the time within which the circuit court had authority to modify the sentence pursuant to section 5-8-1(c) of the Unified Code of Corrections (Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1005-8-1(c)) had expired. Rosin, 75 Ill. 2d at 157. In addition, the supreme court stated that even if the defendant treated his motion in the circuit court as a petition pursuant to section 72 of the Civil Practice Act, he would not be entitled to relief:

"Section 72 is not available to attack a judgment on the grounds that evidence[1] which did not even exist at the time of that judgment (*i.e.,* defendant's postconviction behavior) should have been presented."

Rosin, 75 Ill. 2d at 158.

Defendant categorizes the foregoing language in Rosin as *dictum*. We disagree.

_____

[1]The term "evidence" in the context of this quotation clearly refers to a new postjudgment circumstance for which sentence modification was requested, rather than a new proof of a preexisting circumstance or condition. As such, Rosin need not necessarily be construed as authority supporting the State's position that new evidence not in existence at the time of judgment cannot be presented even if it pertains to a preexisting condition.

13

While Rosin was brought as a *mandamus* action rather than an action pursuant to section 72, it is obvious from the analysis of our supreme court in considering alternative grounds for relief that the court was searching for any avenue that would permit sentence modification, including section 72. Likewise in Collins, a procedurally and factually similar sentence-reduction case that followed Rosin, our supreme court indicated that it was exploring all jurisdictional avenues for sentence modification:

> "To dispel any possible misunderstanding as to the meaning of Rosin we now hold that the respondent's motion for a reduction of sentence was not timely made [within the meaning of section 5-8-1(d) of the Unified Code of Corrections], *and that the circuit court had no jurisdiction to entertain it.* ***
>
> The 30-day [statutory] period within which a trial court may modify a sentence is the modern-day adaptation of the common law rule that a trial court retained power over a judgment during the term at which it was entered. [Citations.] A 30-day period is also prescribed for the filing of a motion for a new trial or a motion in arrest of judgment [citation]. After the expiration of that period the circuit court loses power to grant such a motion [citation] ***." (Emphasis added.) Collins, 81 Ill. 2d at 122-23.

Collins, like Rosin, was a *mandamus* action. Collins, 81 Ill. 2d at 119. Although the supreme court in Collins only discussed whether the trial court had jurisdiction pursuant to section 5-8-1(d) of the Unified Code of Corrections, implicit in its decision to grant a *mandamus*—

14

commanding the trial judge to vacate and expunge the sentence modification based on good postsentencing behavior—is the recognition that the trial court was without jurisdiction under any other statutory provision to modify the sentence. The rule emerging from <u>Rosin</u> and <u>Collins</u> can be summarized as follows: a motion for a sentence reduction, filed after the expiration of a 30-day period to modify a sentence and pertaining only to postjudgment matters, cannot, in effect, revest the trial court with jurisdiction to modify or revoke its prior judgment.

Defendant attempts to distinguish the instant case on the basis that his petition is predicated not on good behavior but on the fact that he unjustly served 16 years of his sentence under extremely harsh conditions of Death Row. While we do not disagree that defendant may have unjustly suffered for 16 years, we cannot escape the conclusion that the jurisdictional obstacle to his petition must control. Although defendant served 16 years of his sentence under harsher conditions than the trial judge had imposed for armed robbery, rape and home invasion, this postsentencing occurrence does not impact upon the validity of that sentence. Under such circumstances, "[t]he law of this state vests the authority to pardon or parole in another department of the government and the judiciary have no right to usurp this power." <u>People ex rel. Crowe v. Fisher</u>, 303 Ill. 430, 434, 135 N.E. 751, 753 (1922).

Our sister states agree. "It is well-settled law *** that a court's authority to resentence a defendant depends on whether the previously imposed sentence is *valid*." (Emphasis added.) <u>Jenkins v. Recorder's Court Judge</u>, 438 Mich. 364, 368, 475 N.W.2d 279, 280 (1991). After a lawful sentence is imposed and the trial court loses

jurisdiction, it should not attempt to reassume jurisdiction that it had lost and take upon itself resentencing duties.  Czaplinski v. Warden of Maryland Penitentiary, 196 Md. 654, 659-60, 664, 75 A.2d 766, 768, 771 (1950); see also Reesman v. State, 449 N.W.2d 489, 490 (Minn. App. 1989) (there is no inherent judicial power to modify a valid sentence after it has been executed); People v. Richardson, 100 N.Y.2d 847, 850-51, 767 N.Y.S.2d 384, 386, 799 N.E.2d 607, 608-09 (2003) (a trial court's inherent authority to modify a sentence does not extend beyond correcting mistakes and illegal sentences); State v. Rowe, 118 Ohio App. 3d 121, 123, 691 N.E.2d 1140, 1141 (1997) ("Ohio trial courts do not possess the inherent authority to suspend, cancel, or modify a [valid] criminal sentence once that sentence has been executed, absent specific statutory authority to do so"); Commonwealth v. Harper, No. 2938 EDA 2004 (Pa. Super. January 11, 2006) (trial courts have the power to modify a criminal sentence within 30 days of its entry; after the expiration of the 30-day period, the trial court has an inherent power to modify a sentence only in order to correct mistakes or correct an illegal or fraudulently procured sentence); State v. Crochiere, 273 Wis. 2d 57, 67-70, 681 N.W.2d 524, 529-30 (2004) (trial courts have an inherent power to modify a sentence based on facts relevant to the imposition of the sentence but unknown to the trial judge at the time of the sentencing; however, postsentencing events such as an inmate's progress or rehabilitation, an inmate's reduced life expectancy, or an inmate's declining health are not grounds for resentencing); People v. Fox, 312 Mich. 577, 581-82, 20 N.W.2d 732, 733 (1945) ("To hold *** that the court has power to amend a [valid] sentence after the prisoner has served a part of it would infringe upon the exclusive

16

power of the governor under the Constitution to commute sentence"); State v. Stenklyft, 281 Wis. 2d 484, 544, 697 N.W.2d 769, 798 (2005) (Abrahamson, C.J., concurring in part and dissenting in part), quoting State v. Horn, 226 Wis. 2d 637, 650, 594 N.W.2d 772, 779 (1999) ("The judicial process ends at sentencing, at which point the executive branch of government takes over and the defendant is 'directed to the correctional and rehabilitative process. . . . The judiciary phase of the criminal process—imposing a penalty—is complete' ").

Our Illinois Constitution gives the Governor an unfettered authority to "grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper." Ill. Const. 1970, art. V, §12; People ex rel. Madigan v. Snyder, 208 Ill. 2d 457, 473, 804 N.E.2d 546, 556 (2004), quoting People ex rel. Smith v. Jenkins, 325 Ill. 372, 374, 156 N.E. 290 (1927) ("the Governor's clemency powers granted by the constitution 'cannot be controlled by either the courts or the legislature. His acts in the exercise of the power can be controlled only by his conscience and his sense of public duty' "). Clemency is the historic remedy employed to prevent a miscarriage of justice where the judicial process has been exhausted. Snyder, 208 Ill. 2d at 480.

For the reasons set forth above, we affirm the judgment of the circuit court.

Affirmed.

CAHILL, P.J., and McBRIDE, J., concur.

17